No. 7890.

STATE OF LOUISIANA VS. SAMUEL TRIVAS, *alias* SAMUEL FLED.

The physical condition of the deceased, as a test of the admissibility of his dying declarations, may be revised by this Court, in a trial for murder. State vs. Spencer, 30 An. 362, and State vs. Daniel, 31 An. 91, affirmed.

It involves a question of law blended with a question of fact. State vs. Nelson, 32 An. 845, affirmed.

The dying declarations are not the less admissible because made in answer to questions asked by the wife and physician of the deceased.

The charge of the judge that, the State having proved the killing, malice should be presumed, is erroneous and entitles the accused to a new trial. State vs. Swayze, 30 An. 1323, affirmed.

APPEAL from the Ninth Judicial District Court, parish of Rapides. Blackman, J.

E. G. Hunter, District Attorney, and J. C. Egan, Attorney General, for the State.

First—Dying declarations are matters of fact over which this Court has no jurisdiction.

Second—An exception to the ruling of the Court will not prevail where the accused has suffered no injury thereby.

Third—Malice is presumed from willful killing.

H. L. Daigre for Defendant and Appellant.

The opinion of the Court was delivered by

Poché, J. From a verdict finding him guilty of murder, and a judgment of the Court, sentencing him to death, the accused has taken this appeal, and relies for relief on five bills of exceptions, which are in substance as follows :

First—" The accused objected to the testimony of Dr. S. G. Compton, and Mrs. Mary Hanna, as laying the basis for the introduction of the dying declarations of the deceased, on the ground that it was not the dying declarations of the deceased, but merely answers to interrogatories propounded to deceased, by said Dr. Compton and said Mrs. Hanna, and the answers to which questions are irrelevant and opinions of the deceased, and would not be admitted in evidence if he were a witness on the stand."

Second—" The accused in open Court requested the Court to have taken down in writing, by the clerk of the Court, all the testimony of Mrs. Mary Hanna and Dr. S. G. Compton, being then and there admitted as the dying declarations of the deceased, for the purpose of making it a part of a bill of exception, all of which the Court refused, etc."

Third—" The accused objected to that part of the dying declaration as related by Mrs. Hanna, which stated that her husband said that 'Sam shot him, and that it was a willful murder.' On the ground that it was merely the opinion of the deceased, and could not have been admitted in evidence in case he had been a witness on the stand."

Fourth—" Counsel for the accused asked the judge to charge the jury in writing : That intoxication may render a person incapable of forming or entertaining the intention of committing an assault with intent to commit murder."

Fifth—" That while the judge was charging the jury, he stated that it was only necessary for the State to prove : First, the killing, second, that the prisoner at the bar was the person who did it ; and that when this was done, the law *presumed* malice.

We have not been favored with a brief, by counsel for the accused, who has left upon us the labor and responsibility of doing justice to his client, without assistance on his part, to precisely understand the meaning of the language used in some of the points raised by him, or to appreciate the force and effect of some of his objections, which are vaguely stated in his bills.

1st. The evidence objected to in the first bill, was properly admitted to show the condition of the deceased at, or immediately preceding, the time at which he made statements touching the wounds which he had received at the hands of the accused. The Attorney General, urges, in his brief, that the investigation into the physical condition of

the deceased, as a test of the admissibility in evidence of his statements as dying declarations, is a question of fact, and not subject to our revision as an appellate Court vested, in criminal cases, with jurisdiction over questions of law only; and he quotes two decisions which bear him out in his assertion. 14 A. 651 ; 18 A. 340. But we cannot adopt this doctrine, which was recently overruled by our immediate predecessors. 30 A. 362 ; 31 A. 91. See Greenleaf, vol. 1, Art. 160.

The statements of the deceased are to be received in evidence, when made by him under the belief of approaching death, under the theory that the party would not die with a falsehood upon his lips. The test of the admissibility of the evidence is in the belief of the deceased that death is fast approaching ; that he is, in other words, under a sense of impending dissolution, and his statements concerning the *res gestœ*, under the circumstances, are to be accredited under the law, as would his sworn testimony in ordinary cases. The question, therefore, as to whether the circumstances under which his statements are made, should entitle them to be received as though they were clothed with the sanctity of an oath, as with ordinary witnesses, is one of law blended with facts.

The fact is, the condition of the deceased as to his chances of recovery from the wounds received ; and the question of law is, whether his condition, as shown by the evidence, is such as to create upon his mind the belief of approaching death, under the effect of which his statements are to be received as evidence. The solution of the problem is within the exclusive province of the Court, and not of the jury, and is therefore subject to our revision. Our power to revise questions of law blended with facts, although they do not bear directly upon the guilt or innocence of the accused, has been carefully reviewed by us in the case of the State vs. Nelson, 32 A. 845, and we consider the question as finally settled. In this case, the evidence elicited as the basis for the introduction of his dying declarations, shows that the deceased stated that he was going to die, that he was resigned to die, that this was his last, that he asked and obtained religious consolations, as a preparation for death, and gave instructions as to his worldly affairs, to be carried out after his death ; and between these incidents and his death, which ensued an hour and a half later, he made the declarations which were admitted in evidence. It would be difficult to conceive of a case more thoroughly covered by the rule. There is no force in the objection that the declarations were made in answer to questions propounded to the deceased by his wife and by his physician. Greenleaf, vol. 1, Art. 159.

2d. The second bill retained by the accused refers to the refusal of the District Judge to cause to be reduced to writing the whole evidence

of the two witnesses who testified in connection with the dying declarations of the deceased. The judge had caused to be written that part of the testimony which was intended as a basis for the introduction of the statements of Hanna, the victim, and nothing more was necessary. The dying declarations, when once admitted, were within the exclusive province of the jury, who were the sole judges of their effect, as bearing upon the guilt or innocence of the accused.

3d. The statement of this proposition is an answer to the objection embodied in the third bill of exceptions, to the refusal of the judge to strike out a part of the dying declaration as recited by the witnesses, on the ground that the objectionable part was an expression of opinion by the deceased.

The declaration of the deceased, like the confession of an accused, must be admitted in its entirety, and its effect must be left to the jury.

4th. In his fourth bill, the accused complains of the judge's refusal to charge the jury in writing : " That intoxication may render a person incapable of forming or entertaining the intention of committing an assault with intent to commit murder." The judge answers that he had already instructed the jury on that point, charging, in substance, that the intoxication of the accused could mitigate the homicide to manslaughter, if such intoxication, in the opinion of the jury, was of such a character as to incapacitate the accused from forming a deliberate intention to kill the deceased, unless the evidence would satisfy the jury that he had intoxicated himself for the purpose of provoking the deceased into a difficulty, and of then killing him.

The objection to this charge should not come from the accused, whom it was calculated to favor beyond the limits prescribed by law.

The recognized doctrine is, that the state of intoxication of the accused may be invoked to negative malice or deliberate intent, in the absence of evidence, *aliunde*, to prove premeditation. The intoxication must be of such a character as to create a state of mental confusion, excluding the possibility of a specific intent to take life, or positive premeditation. Wharton's Criminal Law, vol. 1, page 52.

In his instructions, the District Judge had given a charge entirely too liberal to the accused, who should certainly not complain.

5th. The fifth bill is levelled at the judge's charge on the presumption of malice, as flowing from the proof of the act of killing by the accused, which charge was, in substance, as follows : " The State must prove : 1st, the killing, 2d, that the prisoner at the bar did it ; when this was done, the law presumed malice."

We think that this charge was too broad, and should have been qualified, so as not to mislead the jury, by inducing them to believe that malice is presumed after proof of the killing ; and to shift upon the ac-

cused the burden of proving excuse or justification, even when such defense should appear from the very circumstances accompanying the act of homicide. Even if the charge was intended to comply with the rigorous rules of the common law on this point, yet it was too stringent towards the accused, who was entitled, under such rule, that the judge, in charging that malice is to be presumed from the proof of the homicide and throws upon the accused the burden of proving circumstances of alleviation, excuse or justification, should have added to his charge that such circumstances must be considered by the jury in favor of the accused, if they are connected with and arise from the evidence produced against him, and affording proof of the killing. Russell on Crimes, vol. 1, page 483.

In point of fact, malice does not necessarily qualify every homicide, and in many cases the necessity of the act may be dictated by self-defense, or for the protection of the property of the party killing, or in the lawful execution of a lawful mandate of a competent court ; and the legal defense may be shown, by the mere recital of the deed of homicide, as being so intimately blended with the act as to be inseparable therefrom.

Hence it is that experience in criminal practice has compelled the courts of this country to modify and to materially relax the rigor of the common-law rule on this point ; and, recognizing that frequently the excuse for the deed is apparent on the evidence offered to prove the homicide, the courts have shaped the rule so as to conform with undeniable experience. These mild and able modifications were considered and adopted by our immediate predecessors in the case of the State vs. Swayze, 30 A. 1323 ; and we shall now be guided by the rule which requires the judge to charge that malice is presumed from the proof of the homicide, when such proof is unaccompanied by circumstances of extenuation.

The jury must be instructed to weigh and consider all the circumstances arising from, or connected with, the evidence proving the homicide, and that the presumption of the innocence of the accused must yield to the presumption of malice or deliberate intent, only when the evidence is unaccompanied by circumstances showing alleviation, justification or excuse.

We, therefore, conclude that in this case the judge's charge to the jury was calculated to give them an erroneous impression under which to base their deliberations, and that the accused is entitled to a new trial.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury be set aside, and the judgment of the lower court annulled, avoided and reversed ; and it is further ordered that this case be remanded to the District Court for further proceedings and trial, according to law and to the views herein expressed.