State vs. Burton and Jenkins.

## No. 14,190.

STATE OF LOUISIANA vs. ASA BURTON AND CHARLES JENKINS.

### SYLLABUS

1. The Constitution of the State restricts the jurisdiction of this court in criminal appeals to questions of law alone.

2. Hence, in a criminal case where the judge tries the accused, equally as in a case where he is tried by a jury, a finding of facts is conclusive upon this court.

3. The description of a boundary may be a matter of construction for the court and, therefore, a question of law, but the ascertainment of it with the view to its location is a question of fact. So, too, what is "the middle" of a river is a question of law; but once defining that "the middle" of a river is the half way point between its banks, or that *the thread* of the stream is its middle, it is a quesion of fact to determine whether an object in the river is on the one side or the other of "the middle" as thus defined.

4. Between nations, or States, the thread of a boundary river is the line of separation, without reference to the track of navigation.

5. "The thread" of a stream is the line midway between the banks at the ordinary stage of water, without regard to the channel or the lowest and deepest part of the stream.

A PPEAL from the Twelfth Judicial District, Parish of DeSoto — Lee, J.

*Walter Guion,* Attorney General, and *Amos L. Ponder,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Goss & Sutherlin,* for Defendants, Appellants.

The opinion of the court was delivered by

BLANCHARD, J. Defendants were convicted of selling liquor without a license, and Burton having been sentenced to pay a fine of $350.00 and costs, or be confined in the parish jail for a period of sixty days, prosecutes this appeal.

The middle of the Sabine river is the boundary line between the States of Louisiana and Texas.

The town of Logansport is situated on the Sabine river in DeSoto Parish, Louisiana. The County in Texas across the river from Logansport is Shelby. Shelby County is, in the matter of the sale of

intoxicating liquors, a prohibition county. DeSoto Parish was, at the time this indictment was laid, a "high license" parish. ·

Burton owned a flat-boat 44 feet long, by 16 feet wide. Upon it was built a cabin divided into two compartments, one of which (towards the front of the boat) was fitted up for the sale of liquors; the other as a gambling room.

The boat was moored in the river opposite the town of Logansport, but care was taken to locate it entirely on the Texas side of the middle of the river. It was not touching the Texas shore, but was altogether in Texan waters.

It seems Burton was not so much afraid of being proceeded against by the authorities of Shelby County, as he was by those of DeSoto Parish.

This was the situation, and had been for some time, up to the 18th of July, 1901.

While the boat was thus moored opposite Logansport, Burton was indicted in DeSoto Parish for the same offense as is now charged against him. He was tried and convicted, but on appeal here the verdict was set aside, it appearing from *admissions of record* that the boat in which the liquor was sold was at the time wholly on the Texas side of the middle of the river and, therefore, the Louisiana court was without jurisdiction, notwithstanding one of the cables which held the boat in place was fastened to the Louisiana shore—this court properly holding that the jurisdiction of the Louisiana courts could not be extended over Texas territory *by means of a rope.* See State vs. Burton, 105 La. 516.

On the date mentioned above, July 18, 1901, Burton moved his boat down the river, a half mile from its usual place of location, and there tied it up in the river and sold liquors.

He was promptly indicted by the Grand Jury of DeSoto Parish, and brought to trial.

The fact of selling liquor without a license was ·admitted; his defense being a plea to the territorial jurisdiction of the court.

The plea was referred to the merits without prejudice and the whole case was tried at one time.

The contention of the State is that the boat was on the Louisiana side of the middle of the river; that of the defense that it was on the Texas side of the middle.

On the evidence adduced as to its location in the river, the district

judge, who tried the case (it being a non-jury case), found as a fact that the boat was on the Louisiana side of the middle of the river. He, therefore, overruled the plea to the jurisdiction of his court and adjudged the accused guilty.

A bill of exceptions to the overruling of the plea was taken, and to it, and to a similar bill reserved to the judge's ruling refusing a new trial, all the evidence is attached and brought up.

We are asked to sit in judgment on this evidence and to find *as a fact* that it establishes the boat was on the Texas side of the river, and, so finding, to reverse the judgment appealed from.

By the Constitution of the State the jurisdiction of this court is confined, in criminal cases, *to questions of law alone.* Article 85.

Hence, in a criminal case, where the judge tries the accused, equally as in a case where he is tried by a jury, a finding of facts is conclusive upon this court.

Counsel for defendant bring the case here on the contention that what is the middle of the river is a question of law, and that the trial court erred in his ruling and findings in reference thereto.

The description of a boundary may be a matter of construction for the court and, therefore, a question of law; but the ascertainment of it with the view to its location, is a question of fact. So, too, *what is* "the middle" of a river, is a question of law; but once defining that "the middle" of a river is the half-way point between its banks, or that *the thread* of the stream is its middle, it is a question of fact to determine whether an object in the river is on the one side or the other of "the middle" as thus defined.

Mr. Gould, in his work On Waters, 2nd Ed., § 202, says that when parishes or towns are separated by a fresh water river, its thread is *prima facie* the boundary between them. Continuing he says:—

Between nations, or States, the thread of a boundary river, whether tidal or fresh, is presumably the line of separation, without reference to the track of navigation.

And in a note to the section from which the quotation is made, it is said:—

The eastern boundary of Iowa, declared by statute to be "the middle of the main channel of the Mississippi river," and the western boundary of Illinois, declared by another statute to be "the middle of the Mississippi river," and the *filum aquae,* the middle of the main stream of the river and not the middle of the deep water used by vessels.

Defining what "the thread" of a stream is, the same author, at § 198, says it is the line midway between the banks at the ordinary stage of water, without regard to the channel or the lowest and deepest part of the stream.

In the instant case, the trial judge found as a fact that the boat of the defendant was on the Louisiana side of the middle of the river if the thread of the river be taken as its center, and equally so if its center be the half-way point from bank to bank—meaning, we suppose, its high banks.

This court is powerless to disturb this finding. State vs. McAdams (not yet reported); State vs. Nettles, 41 La. Ann. 323.

Judgment affirmed.