(64 South. 711.)

No. 20,252.

STATE v. MALONE.

(Jan. 5, 1914. Rehearing Denied March 16, 1914.)

(Syllabus by the Court.)

CRIMINAL LAW (§ 737*)—VENUE — QUESTION FOR JURY.

Where the boundary line between two parishes has not been established by a conjoint survey as provided by section 2624 of the Revised Statutes of 1870, the question of the venue of a crime alleged to have been committed in one of the parishes should be referred to the jury to be determined by the preponderance of the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1703, 1704, 1706; Dec. Dig. § 737.*]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; H. Mixon, Judge ad hoc.

A. P. Malone was indicted and placed on trial for murder and excepted to the jurisdiction. Exceptions sustained, and the State appeals. Reversed and remanded, with directions.

See, also, 133 La. 56, 62 South. 350.

R. G. Pleasant, Atty. Gen., W. H. McClendon, Dist. Atty., of Amite, and G. A. Gondran, of New Orleans, for the State. R., C. & S. Reid, of Amite, for appellee.

LAND, J.   Defendant was indicted for murder alleged to have been committed in the parish of Tangipahoa. Defendant excepted to the jurisdiction of the court on the ground that the homicide occurred in the parish of St. Helena. This exception was referred to the merits of the case, and on the trial evidence was submitted to the jury as to the locality of the commission of the alleged crime. The defendant was found guilty as charged without capital punishment. The defendant moved for a new trial on the ground that the court had erred in receiving the testimony of witnesses to show a different western boundary line of the parish of Tangipahoa from that shown on the official map of said parish. The court sustained the motion and granted a new trial. Whereupon the defendant petitioned the court to be discharged from custody, or in the alternative to be admitted to reasonable bail. On the same day the court, by an ex parte order, discharged the accused from custody without day. The state appealed; and the Supreme Court annulled and reversed the order, and remanded the case to be proceeded with according to law. See State v. Malone, 133 La. 56, 62 South. 350.

After the remand, the exception to the jurisdiction was fixed for trial before the presiding judge. The district attorney objected to the trial of the exception before the judge alone, on the ground that questions of fact were involved, over which the jury alone had jurisdiction.

The exception was taken up, evidence adduced, and the exception was sustained, reserving, however, the right of the state to take such action as its officers may see fit. The state has appealed.

The evidence introduced on the trial of the exception took a wide range, but the judge held that the act creating the parish, and the official map of the state prepared by W. J. Hardee, controlled, and that (there being no dispute as to the spot where the killing occurred) the homicide was committed in the parish of St. Helena.

The parish of Tangipahoa was created by Act 85 of 1869. For the purposes of this case, it is only necessary to consider a part of the line between the new parish and the parish of St. Helena, described as follows:

"Beginning at the point of the state line dividing the states of Louisiana and Mississippi where it is intersected by the Meridian section line, one mile west of the Meridian line dividing ranges six and seven (east), thence directly south on said section line to the point where it intersects the western prong of the Natalbany creek, thence along the eastern bank of said

western prong of the confluence of said prong with the Natalbany river, thence along the eastern bank of said Natalbany river to the point where it empties into the river Tickfaw."

In 1870, C. Chamberlain was employed by the police jury of the parish of Tangipahoa to survey and establish the boundary lines of that parish. Chamberlain made the survey, and made a report of his work which was entered on the minutes of the police jury. Chamberlain's report shows that he ran the western boundary on the section line described in the act of 1869 "to the intersection of said section line with the east prong of the Natalbany river." The report continues as follows:

"Not meeting a plainly defined west prong at the point expected, I continued on down the line hoping to intersect the west prong near its junction with the main branch; but instead I struck the east prong not far from its junction with said west prong. At a point some distance above, the section line crosses a small branch of the west prong emptying into it about a half mile west of the line; I would respectfully suggest that the intersection of the section line with this branch be made the point at which the parish boundary shall leave the section line and continued down the stream."

It is admitted that ever since 1870 the small area west of the section line which was included within the Chamberlain survey has been recognized and treated by the parochial and state authorities of the parish of Tangipahoa, by its taxpayers, voters, and people at large, as a part and portion of said parish. There is no evidence in the record tending to show that the parish of St. Helena has ever claimed or exercised jurisdiction over said area. It follows that the Chamberlain west line is and has been for more than 40 years the de facto boundary between said parishes.

For the purpose of considering the location of county lines, not only the language of the law, but public practice, must be looked to in connection with the levy of taxes, selection of jurors, etc. 5 Cyc. 962.

Whether the Chamberlain line, or the Har-

dee map line, is correct, is a mixed question of law and fact. The act of 1869 calls for the section line and the west prong of said creek. Chamberlain's survey showed that the prolongation of the section line intersected the east prong of the same stream. Hence the actual survey showed a conflict between the two calls.

Counsel for defendant, in their brief, assert that, if Chamberlain had continued his line south, he would have come to a point where it intersected the main west prong of the Natalbany creek. Chamberlain's report showed that he did continue said line until it intersected the east prong of said creek. Hence it appears that the question of boundary at issue involves questions of fact, which should have been referred to the jury, who are, under our Constitution, judges of the law and the facts in criminal cases. Where calls conflict, the true boundary should be left to the jury under proper instructions. 5 Cyc. 970. It is improper to instruct as to the actual location of the boundary in dispute. Id. 971.

In State v. Burton, 105 La. 516, 29 South. 970, it was admitted that the alleged offense of selling intoxicating liquors without a license was committed in a boat on the Texas side of the Sabine river, and that the vessel was attached to the Louisiana side by means of a rope. This court disposed of the case by saying:

"The jurisdiction of the Louisiana courts cannot be extended over Texas territory by means of a rope."

In a subsequent case against the same defendant, the court said:

"The description of a boundary may be a matter of construction for the court, and therefore a question of law; but the ascertainment of it with the view of its location is a question of fact."

See State v. Burton & Jenkins, 106 La. 732, 31 South. 291.

In State v. Kline, 109 La. 603, 33 South.

618, the question was whether the crime of larceny had been committed in the state of Louisiana or in the state of New York. The court said:

"The state insists and charges that there was larceny of the goods within its borders.

"That is a matter of fact, blended in this case with law, which has to be submitted to and passed upon by a jury upon evidence adduced before it under a charge from the judge. State v. Foster, 8 La. Ann. 290 [58 Am. Dec. 678]; State v. Tanner, 38 La. Ann. 307; State v. Harris, 107 La. 196 [31 South. 646]; State v. Starks, 42 La. Ann. 315 [7 South. 540]."

A question of boundary is the same whether raised in a criminal or civil suit. Where the boundary between two parishes has never been surveyed and established by a conjoint survey as provided by section 2624 of the Revised Statutes of 1870, and a certain section had been treated by the parochial authorities and the owners as lying wholly in one of the parishes, this court applied the maxim, "Communis error feeit jus." See Booksh v. Wilbert, 115 La. 355, 39 South. 9. In Labarre v. Burton Co., 126 La. 990, 53 South. 116, this court said:

"It is not absolutely certain in which parish the land in controversy is." The preponderance of evidence seems to point that it is in assumption, and "doubtless these lines * * * will be located contradictorily with the authorities of these parishes. Until then each case that may arise * * * in the somewhat free zone will have to be decided according to the preponderance of" evidence "subject to future lines, when, or if ever, established."

So in the present case, the boundary line between the parishes of Tangipahoa and St. Helena never having been fixed by a joint survey under the statute, the question of venue must be determined by the preponderance of the evidence.

It is therefore ordered that the judgment appealed from be reversed, and that this case be remanded, with instructions to refer the question of venue to the jury and for further proceedings according to law.

MONROE, J. I concur in the decree.