MONROE, G. J.
[1] Defendant, having been indicted for murder, alleged to have been committed in the parish of Concordia, filed a plea to the jurisdiction and motion to quash, on the ground that the offense, if committed, was not committed in that parish; and the plea and motion having been overruled, he (without taking any bill of excep; tion) appealed to this court, by which the appeal was dismissed, on the ground that an appeal in such ease lies only from the final judgment. State v. Jackson, 140 La. 681, 73 South. 770. The trial was then proceeded with in' the district court, and certain bills of exception were reserved which will now be considered.
Bill No. 1 was reserved to the refusal of the court to give the following special charge, to wit:
“Gentlemen of the Jury: The court charge? you that, if you find that the deceased was the aggressor in a difficulty which occurred shortly before the killing, and in a few minutes after without new provocation he again attacked defendant, heating him over the head with bottles, cutting him therewith to the skull, and fracturing part of the same, and that defendant, on getting away, armed himself with a pistol to protect himself against the deceased, upon meeting whom, unexpectedly, the motions, actions, and threats of deceased, and other surrounding circumstances seen and heard by defendant, were such as to induce a reasonable belief that deceased intended then and there to kill defendant, or to do him great bodily harm, and defendant, believing that his life was in danger, or that deceased was then about to do him great bodily harm, * * * acted upon the belief that the killing was necessary in self-protection, it is enough to excuse the homicide.”
The court assigns the following reasons for its refusal to give the requested charge, to wit:
“Because the court thought the charge unduly stressed certain portions of the evidence bearing upon the point, without taking note of the fact that there was other evidence on the same point, which, in the court’s opinion, was unfavorable to the accused; and also because the court had already, both in its general and special charge, fully and fairly instructed the jury on the law of self-defense, substantially, as follows.”
And then follows a charge upon the law of self-defense which fully covers the point presented by the bill, as will appear from the following excerpt:
“That to entitle a party to the right of resorting to this extreme measure of taking the life of another, the party committing the homicide must have reason to believe, and must honestly be> •lieve_, from all the facts and circumstances attending and surrounding the homicide and immediately preceding it, as they appear to him, that he is in imminent danger of losing his life, or suffering great bodily harm. That the danger-need not be actual, but it is quite sufficient if the danger is only apparently actual and imminent, to the honest belief of the person taking the life of the assailant. That to justify this honest belief there must have been made by the deceased, immediately preceding the mortal blow, or the firing of the fatal shot, what the law calls an overt act. That the overt act is such a felonious assault, or hostile demonstration, as reasonably puts the person committing the homicide in honest fear of the immediate loss of life, or sufferance of great bodily harm. _ That the jury must find from all the facts and circumstances attending and surrounding the homicide whether or not, in any given case, there was such an overt act, or, in other words, whether there was actual or apparent immediate danger of loss of life or the sufferance of great bodily harm to the honest belief of the party committing the homicide.”
*543 Bill No. 2 contains the following recital of part of the charge, as given by the judge, and of a special charge, requested by counsel for defendant, to the refusal of which the bill was reserved, to wit:
“That at the time of the killing, in order to make the same excusable homicide, in self-defense, there must have been, then and there, an overt act on the part of the deceased by some hostile manifestation on the part of the deceased of such a nature as would put defendant in fear and did put defendant in fear of loss of life or great bodily harm, and, unless such hostile motion or manifestation was then and there made on the part of the deceased towards the accused, there is no overt act, and defendant would not be justified in taking the life of the deceased.
‘"xnat this charge of the court was not excepted to by the defendant, but defendant, not thinking it sufficiently full and not sufficiently covering the law, with regard to overt acts, as applicable to the facts of this particular case, asked the following charge of the court, to wit:
“ ‘Gentlemen of the Jury: If you find that defendant’s life had been threatened, and he severely beaten, and deceased, a short time after-wards, meets accused, without design, -and deceased then asks a bystander for a pistol to kill a man, and the bystander is within a few feet of him_, with a pistol in his right coat pocket, with his hand therein, and deceased, at the instant he asks for the pistol, stepped towards such person, there standing, with the apparent purpose of getting such pistol, and at this time the defendant came in the door of the boat, about 16 feet distant, that such request for a gun and effort to get it might amount to an overt act.’ ”
The judge refers to the charge given by him as covering all that the case required upon the subject of “an overt act.” We find no error in the rulings complained of in the two bills thus mentioned.
“It is not the duty of the court to state the law to the jury more than once, nor to state it in the identical language of a requested charge.” Itnobloeh’s Or. Dig. p. 96; 12 Oyc. 662, 665.
And:
“It is proper to refuse, and generally an error to give, an instruction which singles out or emphasizes particular parts of the evidence or gives undue prominence to isolated facts.” 12 Cyc. 649.
Bill No. 3, taken in connection with the statement per curiam, was reserved to the charge, given by the judge:
“That it was not necessary for the venue to be established beyond a reasonable doubt, but that all that was necessary was for them [the jury] to find, from a preponderance of the evidence, and to their satisfaction, that the crime charged was committed in the parish of Concordia, La.”
In considering this bill, it is proper to remark that we do not understand it to be questioned that the testimony, including that of the defendant, shows that defendant fired the shots whereby the decedent was killed, and that they were fired, and that the death occurred in Louisiana; the bill, therefore, presents the single question of ]aw whether the venue, as between two parishes in this state, should have been established, by a preponderance of the evidence, to the satisfaction of the jury, or “beyond a reasonable doubt.”
The homicide, it may be stated, occurred at night on a steamboat upon which defendant and decedent were passengers, and which, proceeding up Black river, had reached a point where that stream serves as the boundary between the parishes of Concordia on the right, and Catahoula on the left; the line being the “thread” of the stream midway between the banks at the ordinary stage of water without regard to the channel or the lowest and deepest part of -the stream (State v. Burton and Jenkins, 106 La. 732, 31 South. 291), and the contention on the one side being that the boat or the parties, or both, were to the right of the line at the moment of the shooting, and upon the other that they were to the left.
Blackstone defines “a crime or misdemean- or” to be:
“An act committed or omitted in violation of a public law, either forbidding or commanding it.”
Mr. Bishop says that only by the variable and uncertain words “public law” does Blackstone’s definition distinguish a crime from a civil wrong, and he gives the following as being'“as nicely accurate a definition as the subject will admit,” to wit:
*545 “A crime is any wrong which the g'ovcrnment deems injurious to the public at large, and punishes through a judicial proceeding in its own name.” Bishop’s New Or. Law, vol. 1, p. 32.
Under either definition, no act can be considered a crime unless made so by law.
[3] “The criminality of the act or omission,” to use the language of a well-known lexicographer, “consists, not in the simple perpetration of the act, but in its being a violation of a positive law.” Bouvier’s Law Die. verbo “Crime.”
It is clear, therefore, that in order to secure a conviction in a criminal prosecution it is necessary to show not only that the act denounced as a crime has been committed, but that it has been committed within the territory where the law invoked for its punishment prevails, and that from a legal point of view the one factor is as much an ingredient of the offense, and bears as directly upon the question of the guilt or innocence of the accused, as the other. Where, however, an act, otherwise falling within the definition of a crime, is committed within the boundaries of a state whose state-wide law penalizes it, it is equally a crime whether committed in one part of the state or another; and, though the law may provide for its prosecution in the particular county or parish where committed, the question, whether it was committed in the one county or parish or the other, is one which concerns merely the place and tribunal in which the prosecution is to be conducted, and in no manner affects the question of the guilt or innocence of the accused.
In Union Pac. R. Co. v. State, 88 Neb. 547, 130 N. W. 277, Ann. Cas. 1912B, 936, plaintiff in error was prosecuted for an alleged violation of the “anti-pass” law of the state of Nebraska, in issuing a pass in Lancaster county in that state, and the Supreme Court found that the question of venue had been rather overlooked on the trial, that it was probable that the pass, if issued at all, had been issued in Douglas county; that it appeared reasonably certain that, if the question had been properly submitted, the jury would not have convicted the defendant; and it held that:
“The venue in a criminal prosecution may be proved by facts and circumstances, but where no direct evidence is produced for that purpose, the facts and circumstances relied on must be such as, presumptively, to establish that fact beyond a reasonable doubt.”
One of the learned members of the court, dissenting, expressed the following view (quoting in part):
“It is said in the majority opinion that the fact that the trial was held in the county where the alleged crime was committed must be proved beyond a reasonable doubt. This was the ancient rule, and it still is, no doubt, adhered to in some jurisdictions. It does not seem to be based upon reason. The presumption that a defendant is innocent, and the rule that his guilt must be proved beyond doubt before he can be degraded and punished, have a basis in humanitarian consideration as well as in law, but the place of trial is no part of the defendant’s case, and does not in fact affect the question of his guilt or innocence.”
In a note appended to the case thus cited, it is said (Ann. Cas. 1912B, 939):
“While the courts are not all in harmony as to the degree of proof required to establish the venue in a criminal prosecution, the great weight of authority supports the view that the venue need not be proved beyond a reasonable doubt.”
And cases decided by the courts of last resort in a number of the states are cited as supporting the “majority rule” thus announced, including Wilson v. State, 62 Ark. 497, 36 S. W. 842, 54 Am. St. Rep. 303, in which it was said:
“The venue must be proved, but the question is whether it must be proved beyond a reasonable doubt, or by a preponderance of the evidence only. As Bishop says, it is often, and perhaps generally, assumed that it must be proved beyond a reasonable doubt, but we see no reason for this assumption. To hold that it may be proved by a preponderance of the evidence, and that the doctrine of reasonable doubt has no application where the question of proof required to show the venue in a criminal case is involved, deprives the defendant of ■no right, for it is only his guilt that is required to be proved beyond a reasonable doubt.”
*547 And also including Brunson v. State, 4 Okl. Cr. 487, 111 Pac. 988, in which it was said:
“Only those allegations in an indictment which involve the guilt of a defendant are to be proved beyond a reasonable doubt. The venue of an offense does not come within that class.”
Other eases are cited as supporting what is called the “minority rule,” to the effect that the venue in a criminal prosecution is a material element of the offense, and must be proved beyond a reasonable doubt.
And in Wharton’s Or. Ev. (10th Ed.) vol. 1, pp. 318, 319, we find the following:
“The degree of proof as applied to the evidence in all criminal prosecutions is that all essential elements must be proved beyond a reasonable doubt. Hence, in such proceedings, venue, being an essential element, must be proved beyond a reasonable doubt. It is true that a number of cases state, in terms, that venue need not be proved beyond a reasonable doubt, but those decisions also add that if the only rational conclusion from the facts in evidence is that the crime was committed in the venue laid, the proof is sufficient. A rational conclusion is a conclusion that leaves no reasonable doubt, so that the difference seems to be merely in the form of expression, and not in the degree of proof.”
It is no doubt true, we think, that, where venue is an essential element of a crime, it must be proved beyond a reasonable doubt; but where it is proved beyond a reasonable doubt or conceded that an act denounced by the law of a particular state as a crime has been committed within the territorial limits where that law prevails, the question whether it was committed within the limits of one political subdivision of the state or another concerns, as we have said, not the guilt or innocence of the person accused, but merely the question of the place and court in which he shall be prosecuted; and that being the case, we are of opinion that such fact may be established by a preponderance of the evidence, to the satisfaction of the jury, and that there was no error in the ruling of which defendant complains.
[2] Bill No. 4 contains the recital that:
“The assistant counsel for the state, in his closing address to the jury, requested the stenographer to read from his notes, to the jury, the testimony of Mr. Paris, on the subject of the difficulties between the deceased and the accused. After the stenographer had done so, the counsel for the accused requested the stenographer to read to the jury, .from his notes, the testimony of Messrs. Lambright and Adams on the same subject,. which request was refused by the court.”
To which ruling the bill was reserved.
The judge states that the assistant counsel, in closing for the state, wishing to comment or base his argument on the testimony of the witness Paris, and wishing to refresh his memory in regard to it, requested that it be read, which was allowed; that he did not deem it proper to allow defendant’s counsel to interrupt the assistant counsel and, at that time, break the thread of his argument and divert his thoughts, but that if the jury had requested that the testimony of Lam-bright and Adams be read, or even if defendant’s counsel had renewed his request, it would have been granted.
Tbe bill is without merit. It was entirely a matter between the counsel who was addressing the court and jury and the court whether the interruption should be permitted.
Bill No. 5 was reserved ‡0 the refusal of the court to grant a new trial. The motion for new trial alleges error in the rulings which were excepted to, and to that extent need not be further considered. It, however, contains the following additional averment, to wit:
“Defendant, assuming, for the sake of argument, the law to be that it is not necessary to establish the venue beyond a reasonable doubt, but that what is required is that it be established by a preponderance of the evidence, avers, in the alternative, that the venue has not been established by a preponderance of evidence, under the charge of the court, as shown by its per curiam, attached to bill No. 3, and under the law and the evidence, and attaches hereto the testimony of W. B. Sadler on said subject, taken on the trial of the case, it being all the evidence on said subject, and that, under the charge of the court and the law and the evidence, as established, the state has failed to prove the venue, even by a preponderance *549 of evidence, and for that reason the verdict is contrary to the law and the evidence on this point and entitles your defendant to a new trial.”
[4] The Constitutions of the state, since that of 1845, have restricted the jurisdiction of this court in criminal cases to “questions of law alone,” and it has been uniformly ' held, since that time, that the court is without jurisdiction to consider the testimony adduced in a criminal case and submitted to a jury, with a view of reviewing the verdict predicated thereon.
In State v. Foster, 8 La. Ann. 290, 58 Am. Dec. 678 (1853), the question was whether a schooner, upon which a murder was said to have been committed, was, at the time, within the parish of St. Bernard, and the court said (8 La. Ann. 292, 58 Am. Dec. 678):
“The fourth point of error assigned appears to us to involve a question of fact, and, as such, to be excluded from our appellate jurisdiction * - * * by article 62 of the Constitution [of 1852], * * * But whether * * * the schooner was at such a point as described is a question of fact, into which we cannot inquire.”
In State v. Burton and Jenkins, 106 La. 732, 31 South. 291, the question was whether liquor had been sold in violation of law upon the Louisiana or the Texas side of the Sabine river, the selling having been done from a boat, of which it is said in the opinion of the court:
“On the evidence adduced as to its location, the district judge, who tried the case (it being a nonjury case) found as a fact that the boat was on the Louisiana side of the middle of the river. He therefore overruled the plea to the jurisdiction of his court, and adjudged the accused guilty. * * *
“We are asked to sit in judgment on the evidence and to find, as a fact, that it establishes that the boat was on the Texas side ot the river. * * * By the Constitution, * * * the jurisdiction of this court is confined in criminal cases to questions of law alone. Article 85. * * * ”
In State v. Tanner, 38 La. Ann. 307, it was urged on the appeal that the venue had not been proved, and the court said:
“The ground, substantially, is that the evidence does not support the verdict. Under the constitutional restrictions and the repeated decisions on the point it is idle to make such objections before this court.”
In State v. Nettles, 41 La. Ann. 323, 6 South. 562, referring to the same point, the court said:
“We can but express our painful surprise to see an appeal to the court on such a flimsy pretext,” etc.
In State v. Starks, 42 La. Ann. 316, 7 South. 540, the question of the alleged failure of the state to prove the venue of the crime was raised in a motion for a new trial. The court said:
“The venue, like any other fact in the chain of evidence, required to convict the accused is exclusively within the province of the jury, with which the appellate court, vested with jurisdiction over the law of the case only, has no right to interfere.”
And to the same effect are the decisions in State v. Clifford, 45 La. Ann. 983, 13 South. 281; State v. Kennon, 45 La. Ann. 1192, 14 South. 187; State v. Thornton, 49 La. Ann. 1010, 22 South. 315; State v. McAdams, 106 La. 720, 31 South. 187.
In State v. Nelson, 32 La. Ann. 842, this court, through Chief Justice Bermudez, carefully considered the limitation placed upon its appellate jurisdiction by the provision of the Constitution to the effect that such jurisdiction shall “extend * * * to criminal cases on questions of law alone” (article 85), and said:
“The prohibition to the exercise of the jurisdiction of this court lies to its power to find pure questions of facts, such as were submitted to and found by the jury. The inhibition does not extend to the questions of law based upon facts, submitted to and determined by the judge. Of course the court could not review, under any circumstances, the verdict of the jury on the facts before them on the trial of the accused.”
Affirmed in State v. Trivas, 32 La. Ann. 1088; 36 Am. Rep. 293, and State ex rel. Haab v. Judge, 104 La. 65, 28 South. 902.
‘.‘Whether the venue has been properly laid,” say some of the authorities, “is a question of law; whether it has been proved is for the jury.” 12 Cyc. 591.
“The place of the commission of a crime is a *551 matter of fact, which has to he submitted to and passed upon by the jury upon the entire evidence adduced under a charge from the judge. If the Supreme Court could pass upon that issue at all, after a finding adverse to the accused (State v. Tanner, 38 La. Ann. 307), it could not do so upon fragmentary evidence.” State v. Kline, 109 La. 603, 33 South. 618.
It may be said that, as the particular question of venue here presented concerned only the jurisdiction of the court and the place of trial, and not the guilt or innocence of the defendant, it should have been left to the court and not to the jury. As we have already stated, however, that question was first (whether properly or improperly) submitted to the court, by which the jurisdiction was sustained, but when the appeal from that ruling was dismissed, and the trial upon the merits was entered upon, it no doubt became evident that no conviction could be obtained unless the state proved to the satisfaction of the jury that a crime had been perpetrated by reason of the fact that an act prohibited and penalized by the law of Louisiana had been committed within the limits of the state; and, as that must always be the case, it appears to us that no good purpose can be sub-served by submitting the question of the venue (meaning the place where a crime is said to have been committed) to the court. Moreover, as the question is clearly one of fact, which must be submitted to the jury, on the issue of crime vel non, we think it could hardly have been the intention of the lawmakers to vest jurisdiction thereof in the court for another purpose, since it might very well happen that the two authorities would reach different conclusions from the same evidence, and as this court holds that it has no power to review the finding of the jury upon a question of fact, an undesirable situation ’might be brought about.
In State v. Moore, 140 La. 381, 72 South. 965, to which we are referred by counsel for defendant, the defendants were prosecuted in the parish of East Feliciana, upon a charge of libel, said to have been found in certain articles in a newspaper which was circulated in that parish but was printed and originally issued in New Orleans. There was a plea to the jurisdiction and motion to quash, on the ground that, if any crime was committed, it was committed, not in the parish of East Feliciana, or within the jurisdiction of the Twenty-Fourth judicial district court, but in the city of New Orleans, and it was admitted “that the articles alleged to be libellous were set up and printed in the city of New Orleans, but circulated through the mails in the parish of East Feliciana.” The plea and motion were submitted on that admission to the trial judge and overruled, and on application by defendants to this court, that ruling (the present writer dissenting) was reversed, the plea and motion sustained, and the trial judge prohibited from further entertaining the prosecution. It will be seen, therefore, that whatever issue of fact there might have been in the case was removed by the admission of the parties, and that the sole question presented to this court was whether, as a matter of law, the circulation of an alleged libel in a place other than that of its original issuance constitutes a publication in the place of circulation. Clearly the ruling of the court upon that subject establishes no precedent which should control our decision in the instant ease.
Our conclusion is that the question of the place where the act here charged as a crime was committed was one of fact, which was properly submitted to and decided by the jury, and that this court is without jurisdiction to review that decision. The conviction and sentence appealed from are therefore
Affirmed.
PROVOSTY, J., concurs in the decree-, and hands down reasons. See 77 South. 200.
O’NIE’LL, J., dissents, and hands down reasons. See 77 South. 200.
LEOHE, J., takes no part.