## COMMERCIAL BANK v. MEAUX et al.
### No. 1425.

Court of Appeal of Louisiana. First Circuit. Jan. 21, 1935.

J. O. Broussard, of Abbeville, for appellant.

Mouton & Davidson and Dan Debaillon, all of Lafayette, for appellees.

ELLIOTT, Judge.

Commercial Bank alleges that it is a judgment creditor of David Meaux for $1,760.50, with interest and attorney's fees in addition. That said judgment against David Meaux was rendered March 18, 1929, and was recorded the same day it was rendered in the mortgage records of the parish of Vermilion. That David Meaux sold certain land subject to its said mortgage to Horace Meaux and Elias Spell. Further alleging that Horace Meaux and Elias Spell have possession of lands acquired by them from David Meaux, situated in the parish of Vermilion, subject to its said mortgage, it brought an hypothecary action against them in the parish of Vermilion to compel them to either give up the land or pay the amount of the mortgage.

Horace Meaux appeared and admitted that he was in possession of one of the tracts described in the petition of the plaintiff, but alleged that he had no interest in common with the other defendant. He urged that there was an improper cumulation of demands against him and a misjoinder of parties defendant. This exception was overruled. The case against the two defendants was tried separately. The trial against Horace Meaux resulted in a judgment against him as prayed for, and he has not appealed; consequently, we have nothing further to do with the case against him.

Elias Spell appeared and alleged that he was a resident of the parish of Lafayette; that he was in possession as owner of the other two tracts, making together 40 acres, described in the petition of the plaintiff, but alleges that the land is situated in the parish of Lafayette, and that the district court of the parish of Vermilion is without jurisdiction ratione materiæ as to the land in question. He excepted to the jurisdiction of the Vermilion court, prayed that his exception be sustained, and that the suit against him be dismissed on that account. A plea of estoppel was filed by plaintiff against Elias Spell in which it is urged that he is estopped from questioning the jurisdiction of the district court in and for the parish of Vermilion. This exception was never acted on by the lower court; consequently, the question of estoppel cannot be reviewed.

J. S. Brock, state bank commissioner, was then substituted as plaintiff in place of Commercial Bank. The exception to the jurisdiction of the court was overruled. Elias Spell, Inc., was then substituted as defendant in place of Elias Spell, and answered the demand of the plaintiff, but before the case was tried Liquidators, Inc., was substituted for J. S. Brock, state bank commissioner. These substitutions left Liquidators, Inc., as plaintiff and Elias Spell, Inc., as the defendant before the court.

In its answer Elias Spell, Inc., again urged that the district court in and for the parish of Vermilion was without jurisdiction ratione materiæ for the reason that the domicile of the defendant before the court was in the parish of Lafayette, and that the 40 acres of land claimed of him is situated in the parish of Lafayette; that the title from David Meaux to himself and from him to Elias Spell, Inc., was on record in the conveyance books of that parish, and not in the parish of Vermilion.

It prays that its title be recognized and that plaintiff's demand be rejected.

There was judgment rejecting plaintiff's demand against Elias Spell, Inc. Liquidators, Inc., has appealed. The parishes of Vermilion and Lafayette are not parties to this suit. Consequently the decree herein rendered can only establish the private rights of the parties plaintiff and defendant as to certain land in contest between them. It cannot establish the boundary between the two parishes.

The claim of the plaintiff is that the land in controversy is situated in the parish of Vermilion, and that of the defendant is that it is situated in the parish of Lafayette. As each side had apparent color of right the suit could just as well have been brought in one parish as in the other. The exception to the jurisdiction of the Vermilion parish court was properly overruled. Labarre v. Burton-Swartz Cypress Co., 126 La. 982, pages 985 and 986, 53 So. 113.

The parish of Vermilion was created by Act No. 81 of 1844 out of territory taken for the purpose from the parish of Lafayette. The provision in section 1 of the act, "thence along said Coulee to the mouth of Granges' Coulee to the last timber therein, thence in a direct line to the first timber on the Indian Point Coulee," provides the foundation for the present controversy. As a help toward understanding the situation, we copy the entire section: "Be it enacted, etc., That all that part of the Parish of Lafayette on the south side of the following described line, to-wit: starting at the point where the line dividing the Parish of Lafayette and St. Martin's crosses the Bayou Park Perdu from said point in a direct line to the first woods on the Coulee known by the name of Dalby's Coulee, from thence down said Coulee to the Bayou Vermilion; thence along said Bayou to the mouth of the Coulee Ile des Cannes, thence along said Coulee to the mouth of Granges Coulee to the last timber therein, thence in a direct line to the first timber on the Indian Point Coulee, thence down said Coulee to the mouth or its junction with Bayou Queue Tortue, thence down along the line now forming the boundary of the Parish of Lafayette to the place of starting, and all the territory within said boundary line to be known by and called the Parish of Vermilion."

Section 10 of the act makes it the duty of the parish judge of the parish of Lafayette to transmit to the parish judge of the parish of Vermilion the original of all acts and deeds affecting lands and slaves situated in the parish of Vermilion, and made it the duty of the parish judge of the parish of Vermilion to record the acts in a well-bound book in the parish of Vermilion, but the record does not show that this was done; consequently we are not informed in which parish the S. W. ¼ of the S. W. ¼ of section 30, T. 10 S., R. 3 E., was considered to be situated in 1844 when the facts were fresh in the minds of the parish officers.

The conveyance records bearing on the matter from 1844 to 1903 were not offered in evidence. The best information we have on the subject is the admission of the parties establishing the understanding of the people concerning the location of the boundary 30 or 40 years previous to the commencement of the present suit, which will be presently taken into account.

The act contains no provision for permanently marking the place where then stood the "last timber" in the mouth of Granges Coulee, and where then stood the "first timber" on the Indian Point Coulee, and nothing was done to that end. The failure to permanently mark the point of departure for the direct line provided for from the "last timber" in the mouth of Granges Coulee to the "first timber" on Indian Point Coulee while the timber still stood as it did in 1844, is unfortunate because the phrase "timber therein" and "timber on" as used in the act is ambiguous. The language may refer to a single tree or to a cluster or fringe of trees. If the act has in mind a cluster or fringe of trees then standing, then the area of the cluster or fringe might have bearing on the point of departure as well as on the point of destination. We are without any information on the subject, except that to be gained from the language of the act. This suit was filed September 18, 1930. More than a year afterwards the parish of Vermilion, acting under the provisions of section 2624 of the Revised Statutes of 1870, passed an ordinance directing that the boundary line between the two parishes be established. The survey was commenced April 27, 1931, which was 86 years after the parish of Vermilion had been created. The parish of Lafayette was notified, but took no part in the work. When the surveyor came to the south of Granges Coulee, there was no timber there. The place where had stood the first timber on the Indian Point Coulee was also bare. The surveyor called on some old men to tell him what they knew about the timber locations called for in the act, and obtained from them ex parte statements on the subject. The evidence on the subject of the place of departure on Granges Coulce and the place of arrival on Indian Point Coulee is very unsatisfactory. The line from the place of departure to the place designated on Indian Point Coulee ought to be straight; consequently, if the point of departure and point of arrival are not the points actually called for by the act, then the line run at the instance of the parish of Vermilion is not where it should be. But due to the fact that there had never been any boundary line established between the parishes as provided by law, the rights of the parties do not depend on this line recently run for the purposes stated, but must be judged of according to the common understanding which had existed on the subject for the last 30 or 40 years immediately preceding the suit.

The procès verbal made by the surveyor was offered in evidence and the recital of facts thereunder is taken as his testimony.

Speaking of the situation as it existed in 1844 and referring to the view from the last

timber in the mouth of Granges Coulee to the first timber on Indian Point Coulee, the surveyor says: "No doubt the timber on Indian Point Coulee could be seen from Granges Coulee, the intervening area being open prairie." What he says may have been true, but judging by the number of sections intervening between these two points, the distance must have been between 4 and 5 miles.

The parties each show a registry in the conveyance books of the parish in which they contend the land is situated. The record shows that on June 6, 1903, Mrs. Mary C. Dillard, by authentic act, sold and delivered to David Meaux a tract of land described as containing 10 acres taken from the western portion of the S. W. ¼ of the S. W. ¼ of section 30, T. 10 S., R. 3 E., and it is declared in the act that the land is situated in the parish of Vermilion. On February 12, 1904, Mrs. Dillard sold and delivered to David Meaux the balance of the S. W. ¼ of the S. W. ¼ of said section, and it is declared in the act that the land is situated in the parish of Vermilion. The record also shows that on February 12, 1904, Mrs. Dillard sold and delivered to Elias Spell the S. E. ¼ of the S. W. ¼ of section 30, T. 10 S., R. 3 E., and the act declares that this land is situated in the parish of Vermilion. These three acts were recorded in the conveyance books of the parish of Vermilion.

The record shows that on December 19, 1908, David Meaux sold and delivered the 40 acres of land acquired by him from Mrs. Dillard constituting the S. W. ¼ of the S. W. ¼ of section 30 to Elias Spell, and it is declared in the act that the land is situated in the parish of Lafayette and the title was recorded in the conveyance book of the parish of Lafayette. Elias Spell sold and delivered the same land to Elias Spell, Inc., and it is declared in the act that the land is situated in the parish of Lafayette and the title was recorded in the conveyance books of that parish.

It is shown that the land in question at the time of the sale from David Meaux to Elias Spell, that is, in 1903 and 1904, was assessed in the parish of Vermilion.

█ The following agreement of the parties contained in the note of testimony taken on the trial controls the rights of the parties in the present case. The parties agreed that the following line, to wit: "* * * Beginning at point marked A on plat marked B —, from thence running to point B; thence to point C; thence south to point D; thence east to point E; thence south to point F; thence east to G; thence south to point H; thence east to point I; thence south to J; thence northeasterly to K; thence easterly to Coulee Granges to point marked L, is the line generally recognized by the people living on and near the Lafayette and Vermilion parish line as a division line between the two parishes, and follows the public road up to the point midway between F and G, which is marked O, and from thence cuts through fields, with the exception of the section between point G and H. That all property situated north of the line thus generally recognized by the community is assessed in the Parish of Lafayette where the taxes are paid. That and the property south thereof is assessed in the Parish of Vermilion where the taxes are paid. That all people who are registered and have paid their poll taxes, living north of the line thus recognized, vote in the Parish of Lafayette and people south thereof in the Parish of Vermilion."

That such has been the commonly recognized boundary situation for the last 30 or 40 years. This line commonly recognized by the people living in the two parishes adjoining, about where the line was supposed to be, is traced on a map and was offered in evidence jointly by the parties to the suit, consequently there can be no dispute about the fact of the line and place where it runs. It is in this way established that according to the recognized line all of the section 30, T. 10 S., R. 3 E., is situated in the parish of Lafayette. According to this recognized line the land sold by David Meaux to Elias Spell and from Elias Spell, to Elias Spell, Inc., is in the parish of Lafayette, and the title thereto properly recorded in the conveyance book of that parish. Such being the case, the registry of the judgment in favor of the Commercial Bank against David Meaux in the mortgage book of the parish of Vermilion in 1929 must be denied effect, and the title from David Meaux to Elias Spell and from Elias Spell to Elias Spell, Inc., subsequently recorded in the parish of Lafayette, must be recognized as having been properly recorded and the ownership and possession of Elias Spell, Inc., thereunder respected and given effect.

We have given due regard to the declaration in the title from Mrs. Dillard to David Meaux that the land she sold him is situated in the parish of Vermilion, but not greater than to the declaration in the title from David Meaux to Elias Spell about four years thereafter, that the land in question is situated in the parish of Lafayette, which was in harmony with the common understanding on the subject. In the situation we have in

hand, this recognized line governs in the matter of the right to this land. The situation is similar to that which existed in Cumming v. Biossatt, 2 La. Ann. 794. The court in that case cited the maxim, "l'erreur commune fait le droit." In a similar situation acted on in Booksh v. A. Wilbert Sons Lumber & Shingle Co., 115 La. 351, 356, 39 So. 9, 10, the court held as had been done in Cumming v. Biossatt, 2 La. Ann. 796, saying: "Communis error facit jus." LaBarre v. Burton-Swartz Cypress Co., 126 La. 982, 53 So. 113, and State v. Malone, 134 La. 779, 64 So. 711, are to the same effect.

The judgment appealed from is in our opinion correct.

Judgment affirmed. Plaintiff and appellant to pay the cost in both courts.