ROGERS, Justice.
 

 Prior to January 7, 1941, Benjamin B. Martin, under the name of Martin Bros., Inc., operated the business of restaurant and bar at No. 2000 St. Claude Avenue, in the City of New Orleans. By notarial act executed on that date,' Martin sold his place of business to Alvin Braud for $14,500, of which $7,000 was paid in cash, and for the balance of $7,500, the purchaser issued and delivered to- the vendor a series of notes made payable on various dates in the future. A detailed list of the fixtures and merchandise contained in the business establishment, which were included in the sale, was attached to the notarial act. The act also contained the following declaration: “The vendor and vendee herein have declared that they have made a substantial compliance with the Bulk Sales Law, Act 270 of 1926, and hereby release me, Notary, from any liability thereunder.”
 

 At the time the transaction was consummated, Braud did not have sufficient funds for the cash payment and he borrowed $3,-500 from Sam Goldberg and $1,500 from Conrad Meyer, Jr., in order to make up the required amount, giving to each a demand note for the amount borrowed from him.
 

 Braud immediately took possession and proceeded to operate the restaurant and bar he purchased from Martin. Two days later, January 9, 1941, by an act of sale executed before the same notary, he resold the business to Martin for a cash consideration of $700 and the obligation of Martin to pay $265, due as wages to the employees of the establishment. Thus the transaction netted Martin a profit of more than $6,000. Martin returned to Braud the notes representing $7,500 due on the purchase price, and also cancelled a lease he executed in favor of Braud for the premises in which the business was operated.
 

 The sale of January 9, 1941, by Braud to Martin, was not passed in conformity with the provisions of the Bulk Sales Law, and
 
 *73
 
 the failure of the parties to comply with the law has resulted in the present litigation.
 

 About a month after the re-sale by Braud to Martin, Sam Goldberg brought suit against Martin to recover the sum of $3,500, which he lent Braud to assist him in purchasing the business. Petitioner alleged that he was a creditor of Braud and of the business which he had sold to Martin; that under Act 270 of 1926, known as the Bulk Sales Law, the sale from Braud to Martin was void as against creditors of Braud, the transferor, for the reason that the transfer was in bulk and was not executed in conformity with Act 270 of 1926.
 

 Petitioner alleged that the provisions of the statute were violated in that the parties to the sale did not make a full list of the property sold, and that the names, addresses and amount due each creditor was not demanded by the vendee and that the creditors of the vendor^were not given the notice by registered mail as required by statute.
 

 Some months later, Conrad Meyer, Jr., filed a petition, containing similar allegations, in the same proceeding, seeking to recover the $1,500 which he had loaned Braud.
 

 The defendant, Maftin, answered both petitions denying that he had violated the provisions of Act 270 of 1926. He averred that on. January 7, 1941, there were no creditors of the business, and on January 9, 1941, there were no creditors of the business known to defendant; that he had always purchased and sold for cash, which petitioners well knew; that the claims asserted by petitioners were not such as arose out of or formed any part .of the business of Martin Bros., Inc., and were not such as were comprehended under or intended to be brought within the statutory requirements of Act 270 of 1926; that if the loans were made as claimed by petitioners, they were personal loans made before the consummation of either of the transfers referred to in the petition; that petitioners made th'e loans to Braud in the capacity or relationship of partners or joint-adventurers. .Defendant further alleged that the petitioner, Meyer, was present at both transfers, was fully aware of the terms and conditions thereof, and was in truth and fact the real purchaser and not Braud; that neither Martin nor Braud informed defendant of the existence of any creditor who had advanced money as part of the purchase price; that the suits constituted a scheme entered into by the petitioners, assisted by Braud “to retrieve a large portion of the original purchase price of the said business, all of which can be contributed (attributed) to the injudicious judgment” of Meyer, Goldberg and Braud.
 

 Defendant alleged that Meyer, by his conduct, led petitioner into the belief that a particular state of facts existed and that he is therefore estopped from setting up any claim in his own behalf, which estoppel defendant specifically pleaded.
 

 After hearing the case on its merits, the judge of the district court decreed that the act of sale from Braud to Martin is null,
 
 *75
 
 not having been passed in conformity to the Bulk Sales Law, and that Martin is liable as receiver for the value of the property '($12,000) transferred by the act. He rendered a further judgment against Martin 'for $3,500 in favor of Sam Goldberg and for $1,500 in favor of Conrad Meyer, Jr., together with interest and costs. Defendant Martin appealed.
 

 . This appeal was argued and submitted on March 10, 1943. Conrad Meyer, Jr., one of the appellees, died on March 26, 1943. By proper motion and. order, his widow, Mrs. Henrietta Pujol Meyer, his son, Conrad Meyer III, and his daughter, Mrs. Jeanne Meyer Dickson, as his sole heirs, have been made parties to the suit.
 

 The averments in defendant’s answers that Braud, an experienced- restaurant operator, was an interposed party of Meyer,. a lawyer engaged in active practice, is not sustained by the evidence. Nor does the evidence sustain defendant’s contentions that the present litigation is the result of a nefarious scheme entered into by Meyer, Goldberg and Braud and instituted for the purpose of retrieving a large portion of the difference between the cash price of the first and second sales.
 

 The evidence shows that Meyer, who was the legal advisor and friend of Braud, lent Braud $1,500 in order to help him make up the amount required for the cash portion of' the purchase price of defendant’s business, and that Goldberg, who was a friend of Meyer, acting upon his recommendation and desiring to make an investment yielding interest at the rate of six per cent per annum, lent Braud $3,500 for the same purpose.
 

 The facts being established, only a question of law based thereon remains to be determined. The law involved is Act 270 of 1926, generally known and referred to as the Bulk Sales Law. Section 1 of the Statute provides:
 

 “Be it enacted by the Legislature of Louisiana, That the transfer in bulk, and otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the transferor, of any portion or the whole of a stock of merchandise, or merchandise and fixtures, or of all or of substantially all of the fixtures or equipment used or to be used in the display, manufacture, care or delivery of any goods, wares or merchandise including movable store and office fixtures, horses, wagons, automobile trucks and other vehicles or other goods or chattels of the business of the transferor shall be void as against the# creditors of the transferor, unless made in conformity with the provisions of this Act.”
 

 Defendant contends that the trial judge erred in holding that the transfer complained of was within the intendment of the statute. Defendant argues that the Bulk Sales Law does not apply to plaintiffs’ claims, because they are not such as arose out of or formed part of defendant’s business and are not such as are comprehended within the terms of the law.
 

 Plaintiffs point out that the business operated by defendant was a restaurant and bar and was such a business es
 
 *77
 
 tablishment as is contemplated by the statutory provisions. Plaintiffs argue that their claims are based on contracts of' loan evidenced by the borrower’s promissory notes, and- were entered into for the purpose of enabling the borrower to purchase the business operated by the defendant. They further argue that the best answer to defendant’s contention is to be found in the statute itself, which reads in part as follows : “The transfer in bulk * * * shall be void as against the creditors of the transferor, unless made in conformity with the provisions of this Act.” They point out ’that the statute itself does not differentiate between the types of creditors who are protected by its provisions, and they direct attention to the decision of this Court interpreting the statute to mean that the transfer referred, to therein shall be void as against all creditors. It was so held in the case of Brinson v. Monroe Automobile & Supply Co., 180 La. 1064, 158 So. 558. There the Court, after analyzing the various sections of Act 270. of 1926, held, as shown by paragraph five of the syllabus: “Bulk sales law held applicable to all creditors as against contention that law applied only to creditors who sold merchandise, since purpose of law was to malee property of debtor common pledge of all creditors * * *.”
 

 In the case of Rapides Packing Co. v. Olla State Bank, 17 La.App. 267, 135 So. 772, 773, the Court of Appeal for the Second Circuit, in passing upon the question of what creditors of the transferor are contemplated by Act 270 of 1926, held as follows: “It is noted that this section reads, ‘shall be void as against the creditors of the transferor.’ There is no restriction limiting it to any particular class of creditors. It therefore covers all creditors. It is true that the purpose of the act was to protect wholesalers against unscrupulous merchants who would fill their storehouses with goods purchased on credit, and then sell same in bulk, leaving the wholesaler without recourse for collection. But the Legislature in its wise discretion saw fit to make the law cover all creditors, possibly having in view the danger of running into the ban on class legislation. The jurisprudence in practically all other jurisdictions holds, in interpreting like acts, that it covers all creditors, regardless of how the debt arose”, citing a number of authorities.
 

 Defendant cited M. L. Bath Co. v. Booth McLelland Chevrolet Co., 142 So. 353, also decided by the Court of Appeal for the Second Circuit. But there is nothing in the decision in that case which conflicts with the decisions in the Brinson and Rapides Pácking Company cases. Those cases have not been overruled. They are declaratory of the law as it stands today.
 

 In his answer to the petition filed by Meyer, defendant pleaded that Meyer was estopped from setting up any claim ¿gainst defendant in his own behalf. This plea was not acted on by the trial judge. He decided the case on the merits without ruling on the plea.
 

 Defendant in his brief has not favored us with any argument supporting the plea
 
 *79
 
 of estoppel. In setting forth the nature of the case, he has merely mentioned that such a plea was filed.
 

 In Gordon v. Business Men’s Racing Ass’n, 140 La. 674, 73 So. 768, it was held that where a plea of estoppel was not passed on by the court below, it can not be considered by this Court. To the same effect, see the following cases decided by the Court of Appeal for the First Circuit: Commercial Bank v. Meaux, 158 So. 688; Bloomenstiel v. Tridico, 156 So. 790; Bolton v. Byrd, 154 So. 657.
 

 For the reasons assigned, the judgment in favor of Sam Goldberg is affirmed, and the judgment in favor of Conrad Meyer, Jr., is amended so as to substitute as plaintiffs Mrs. Henrietta Pujol Meyer, Jr., widow of Conrad Meyer, Jr., and Conrad Meyer III and Mrs. Jeanne Meyer Dickson, his sole heirs, and, as thus amended, the judgment in favor of Conrad Meyer, Jr., is affirmed. All costs are to be paid by defendant.
 

 ODOM, J., absent.