CHARLES BOOTON ET AL. V. STATE OF NEBRASKA.

FILED FEBRUARY 26, 1910. No. 16,257.

1. **Criminal Law: VENUE.** "The venue of an offense may be proven like any other fact in a criminal case. It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient." *Weinecke v. State*, 34 Neb. 14.

2. Evidence examined, its substance set forth in the opinion, and *held* sufficient to sustain the verdict.

3. **Criminal Law: WITNESSES: IMPEACHMENT.** The fact that the name of a witness is indorsed on the information in a criminal prosecution, he not having been examined by the state, and no demand having been made upon the prosecution to place him upon the witness stand, and the defendant having called such witness and

interrogated him in his own behalf, does not prevent the state from impeaching him.

4. Instructions complained of examined and found to be without error.

ERROR to the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*John M. Macfarland,* for plaintiffs in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

BARNES, J.

Charles Booton and Roy Raymond, hereafter called the defendants, were jointly tried in the district court for Douglas county on an information charging them with the crime of robbery from the person of one Harry Miller. They were convicted and sentenced to imprisonment in the state penitentiary for the term of ten years. To reverse that judgment they have prosecuted error to this court.

1. Their first contention is that the evidence is not sufficient to sustain the verdict. The reasons assigned are: (*a*) That the venue was not proved; (*b*) that the evidence produced by the state was insufficient to identify them as the persons who committed the robbery; and (*c*) that the evidence for the prosecution was wholly insufficient to overcome their testimony tending to establish an alibi. These questions will be disposed of in the order above stated. The record shows that during the trial in the district court for Douglas county one James Stary was called as a witness for the state and testified in part as follows: "Q. On the night of December 24 did you see these two defendants? A. I did not see them until they held me up; that is the only time. Q. Where was that? A. Thirteenth street viaduct, about five minutes of 11 or 11 o'clock; somewhere around there. Q. In this city, county and state? A. Yes, sir." It further appears from the testimony that after the defendants had

robbed Stary they proceeded down the street; that he turned around and watched them, and saw them hold up and rob Harry Miller, the prosecuting witness in this case, only a block away. It thus appears that the crime was committed in the city of Omaha, county of Douglas, and state of Nebraska. "The venue of an offense may be proven like any other fact in a criminal case. It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient." *Weinecke v. State,* 34 Neb. 14.

On the question of identification, the record discloses that the defendant Booton was positively identified by James Stary as being one of the parties who robbed him. He also described the other man, whose features he did not claim to have observed, as being similar in build to the defendant Raymond. While this witness identified Booton, he described the second man, who assaulted him, as being similar in build to Raymond, and the latter is positively identified by the witness Miller. As above stated, Stary was the first victim. Defendant Booton was identified by him as the man who held the gun on him and compelled him to hold up his hands, and who took his watch while the other man went through his clothes and robbed him. Stary also testified that when they had taken his watch and money they told him to go on; that at that instant they saw Miller coming alone, and one of them said: "Here comes a man, and we will hold him up, too"—or words to that effect. He further testified that he started on, but turned and watched the defendants, and saw them assault and rob the prosecuting witness, Miller. Miller recognized the defendant Raymond as the one who held the revolver while the defendant Booton took his money. There was thus a complete and sufficient identification of each of the defendants. It also appears that when Miller and Stary were taken to the jail where the defendants were confined after their arrest, one of

them recognized both of the defendants as the persons who had committed the robbery. It follows that the evidence upon this point was amply sufficient to sustain the verdict.

On the question of an alibi, the record discloses that the defendants admitted that they were in Omaha during the fore part of the night in question. They testified, however, that they boarded a street car and went to Council Bluffs, and walked from the car line to an assignation house called the "Riverside Hotel", or the "Metcalf Road House"; that they arrived there about 10 o'clock, but neither of them fixes the time positively. They also produced as a witness one Jim Booton, a brother of the defendant Charles Booton, who testified that he was barkeeper at the road house, and that he saw the defendants there about 10 o'clock. One May Noble, who was the keeper of the place above described, also testified that she saw the defendants at her place some time during the evening, and fixes the time at about 10 o'clock. One John Nelson, however, was called as a witness by the defendants, and he fixes the time when he saw them there at about 12 o'clock. The defendants further stated that a couple of women, who were inmates of a house of prostitution in Omaha, called Jim Booton by telephone to meet them at the street car line, and one of the defendants, at Jim Booton's request, met them and escorted them to the road house. They fixed the time of this transaction at about 12 o'clock. The state, however, produced the telephone operator, who took the call of the two women, as a witness, and she testified that the time the call was made was 1:20 o'clock on the morning after the offense was committed. She also produced the record of the call, which, under the rules of the telephone company, she was required to make at the time when the call was received, and thus verified her statement. So it appears that the defendants could have been in Omaha and have committed the crime charged against them at 11 o'clock on the evening of December 24, and still have had plenty

of time to go to the road house and be seen there by the witnesses who testified for them. The testimony as to time was so indefinite that this alone would warrant the jury in finding that the alibi was not proved. Again, the witnesses by which it was sought to establish that defense were of such a character that the jury with propriety might have disregarded their evidence. A careful examination of the bill of exceptions satisfies us that the evidence was sufficient on this point to sustain the verdict of the jury.

2. It is next contended that the court erred in permitting the prosecution to impeach the witness May Noble. It appears that this witness was not called by the state, but was produced by the defendants themselves, so it cannot be said that the rule that a party will not be allowed to impeach his own witness is applicable in this case. No demand was made by the defendants for the prosecution to put May Noble upon the witness stand, although her name was indorsed on the information. Upon the other hand, they chose to call her as their own witness. This being so, we know of no rule of law which would prevent the state from impeaching her, and the authorities cited upon this point do not support the defendants' contention.

3. It is claimed that the court erred in giving the third paragraph of his instructions to the jury. This was an instruction defining a reasonable doubt, and the complaint is that it is argumentative. We have examined the instruction, and find that it is one that has been often approved by this court, and is not subject to the criticism directed against it. Some other points are discussed in defendants' brief, but they are without merit.

From a careful examination of the whole record, we are satisfied that the defendants had a fair and impartial trial, and, finding no reversible error therein, the judgment of the district court is

AFFIRMED.