## McFETRIDGE v. STATE*

(No. 1159; December 23, 1924; 231 Pac. 405)

(Rehearing Denied, 234 Pac. 505)

LARCENY—CORPUS DELICTI—EVIDENCE—CRIMINAL LAW—ASSIGNMENT·
OF ERROR—VENUE—INSTRUCTIONS.

1. Mere possession of personal property recently lost does not show larceny has been committed, though such possession when accompanied by incriminating circumstances may be sufficient.

2. Evidence held sufficient to establish the Corpus Delicti and to sustain conviction for larceny.

3. Evidence *held* to sustain finding that larceny complained of was committed in state and county where prosecution was had.

4. Error alleged in refusing to give a designated group of instructions cannot be sustained if any one of the group is correct.

5. In prosecution for theft of cow, testimony of the dehorning and clipping part of ears of such animal by defendant, for purpose of obviating identification marks, *held* admissible.

#### ON PETITION FOR REHEARING

6. Where, in motion for new trial, assignment of error was a joint one to the refusal to give several instructions, the refusal of one only of them may not be complained of on appeal; it being necessary that the trial court should have been definitely advised of the claimed error.

7. Direct evidence is not necessary to prove venue, but it may be established by proof of facts and circumstances from which it may be reasonably inferred.

8. The evidence being amply sufficient to establish the alleged venue on any theory of proof, any error in refusing to instruct that it must be proved beyond a reasonable doubt, and instructing that it may be proved by a preponderance of the evidence, was neither prejudicial nor fundamentally erroneous, so as to be reviewable without sufficiently definite assignment of error in motion for new trial.

9. Cross-examination of defendant's character witnesses, if improper, *held* not so essentially so as to allow review without exception properly taken.

10. Omitting venue from instruction, defining the material allegations of indictment, *held*, in view of other instruction declaring it necessary to prove venue, neither fundamental error nor necessarily prejudicial.

11. Statement in instruction, after defining material allegations of information necessary to be proved beyond reasonable doubt, that other facts or circumstances surrounding the testimony need not be so established, but that some of them might be established by a preponderance of the evidence or might not be established, *held* not error.

12. Requested instruction to acquit, if the jury find the animal came into defendant's possession ''through accident or mistake or a trick of some other person,'' *held* properly refused; there being nothing in the evidence justifying the giving of it.

13. Refusal of an instruction irrelevant to the evidence except as to certain testimony of defendant as to the manner in which he obtained possession of the animal charged to have been stolen, *held* harmless, in view of other instructions giving him the benefit of such testimony, and in effect requiring acquittal, if the jury believed it.

*NOTE—See Headnotes—(1) 36 C. J. p. 869, (2) 36 C. J. p. 904, 36 C. J. p. 899; (3) 36 C. J. p. 767; (4) 17 C. J. pp. 91, 185; (5) 36 C. J. p. 889 (6) 17 C. J. p. 91; (7) 16 C. J. p. 769; (8) 17 C. J. pp. 88, 350; (9) 17 C. J. p. 75; (10) 16 C. J. p. 1052, 17 C. J. p. 88; (11) 16 C. J. p. 990; (12) 16 C. J. p. 1043, 1045; (13) 16 C. J. p. 1052.

Error to District Court; Laramie County; William A. Riner, Judge.

Charles D. McFetridge was convicted of larceny and he brings error.

*James W. Gault* and *Clarence A. Swainson* for plaintiff in error.

The burden of proof was upon the state to prove that larceny was committed; that it was committed in Laramie County, Wyoming; and that it was committed by defendant, 16 C. J. 529, 26 Fed. 425, 39 Mont. 506, 104 Pac. 513.

. The Court will reverse if the evidence is insufficient; People v. Orin, 188 Pac. 1114; Thornell v. People, 11 Colo. 305; Walker v. State, 41 So. 176. In larceny, the Corpus Delicti has two elements, 1st, that the property was lost by the owner and, 2nd, that it was lost by felonous taking. Dalzell v. State, (Wyo.) 53 Pac. 297; Jefferis v. State, (Ala.) 72 So. 207; People v. Cahill, 106 Pac. 115. Mere possession of recently stolen property creates no presumption of guilt. State v. Lummis, 129 Ida. 141; State v. Boneen, 143 Pac. 134; State v. Potello, (Utah) 119 Pac. 1022; State v. Borgis, (Ida.) 144 Pac. 789; Robinson v. State, 18 Wyo. 230; Sanders v. State, 52 So. 417; State v. Belchary, 136 Mo. 135. The Court erred in admitting the evidence of witness Glasspool; his testimony as to identity was incompetent; Jones Evidence Vol. 2, Section 361.

*David J. Howell,* Attorney General and *L. C. Sampson,* Deputy Attorney General, for defendant in error; *Kinkead, Ellery & Henderson,* of counsel.

Only four alleged errors are discussed in the brief; the evidence was sufficient to sustain the verdict; State v. Woods, 51 Mont. 193, 169 Pac. 39. The Corpus Delicti was established by direct evidence and was sufficient to warrant the conviction of defendant. Dalzell v. State, 7 Wyo. 454; Curran v. State, 12 Wyo. 553. The venue of the crime was also established by the evidence. Tierney v. State, 111 Ala. 174, 20 So. 597; Brooks v. People, 23 Colo. 375, 48 Pac. 502; Harlan v. State, 134 Ind. 339, 33 N. E. 1102. Defendant's possession of the animal was admitted; the reasonableness of his explanations were questions for the jury. State v. Brinkley, 55 Ore. 134, 104 Pac. 893; McDonald v. State, 56 Fla. 74; State v. Bowen, 45 Utah 130, 143 Pac. 134. Where portions of the testimony of a witness are irrelevant and incompetent, it is not error to overrule a motion to strike all of it; Harris v. State, 23 Wyo. 487; Metz v. Willets, 14 Wyo. 511; Dickinson v. State, 18 Wyo. 440; Cornish v. Ter., 3 Wyo.

100; a judgment will not be reversed for insufficiency of evidence if there be evidence to support it. Jones v. State, 26 Wyo. 293. The Corpus Delicti may be proven by circumstantial evidence. Messel v. State, (Ind.) 91 N. E. 565; Frye v. State, (Okla.) 219 Pac. 722; Richey v. State, 28 Wyo. 117; McAdams v. State, 23 Wyo. 294; Possession of recently stolen property, supplemented by other evidence inconsistent with an honest possession, should be submitted to the jury. State v. Sparks, 40 Mont. 82; Ammons v. State, (Okla.) 219 Pac. 426.

BLUME, Justice

The defendant Charles D. McFetridge was convicted of larceny, and he appeals.

The conviction was for stealing, in Laramie County, Wyoming, on or about October 1, 1921, one pure-bred Hereford cow bearing a tattoo-brand with the number 105 in the ears as well as on the horns. The defendant admitted that the animal in question was in his possession, on the so-called McFetridge ranch in the state of Colorado, about 22 miles south of where it had been kept by its owner, commencing from about the middle of October, 1921, up to about January 1st, 1922, when he sold said ranch to Harry E. Miller and at which time he left said animal, together with nine other Hereford cows, on said ranch in possession of said Miller. The animal in question was returned to its owner in the latter part of January, 1922. The defendant explained his said possession in substantially the following manner: On October 14, 1921, he was told by Mr. Wolf that the Hereford cattle referred to were grazing along Willow creek in the neighborhood of his ranch. He knew nothing of them prior thereto. On the following day he was riding toward Ault, and when about three or four miles south of his ranch, he met a man in a Ford car who stated that his name was I. E. Smith. He had not seen or heard of him before. Smith asked defendant whether he had seen anything of

the cattle in question. Defendant answered that he had not seen but heard of them. Smith thereupon said he had lost twelve head; that he would pay defendant $2.50 per head for all he gathered of them; that he would be up to see defendant in a few days; that he had disposed of his holdings in Carpenter, Wyoming; that he was moving to California, and that he thought that the cattle would be wandering back from the direction of Greeley to Carpenter. Defendant again met said Smith some ten days or two weeks later on the road south of Nunn; Smith then asked him to buy the cattle, but defendant stated that he could not do so. It was then agreed between them that defendant should keep said animals—possibly till the following April—for one dollar per month per head. Other evidence in the record shows that substantially the same explanation thus made by defendant as to how he came to have possession of the animals in question was made by him several times prior to the latter part of January, 1922. The witness Wolf testified that he told defendant, about October 14, 1921, that the Hereford cattle in question were grazing on Willow Creek, and that defendant's demeanor indicated that he knew nothing of them. The wife of defendant corroborated the latter as to what took place on the road south of Nunn, and the defendant's testimony was corroborated in minor particulars by other witnesses. Defendant, when on the witness stand, but not before, produced a letter, introduced as Exhibit B, mailed at Carpenter, Wyoming, dated November 15, 1921, addressed to defendant at Ault, Colorado, and received by him there. It is claimed that the defendant wrote this letter himself and it will again be referred to later. It purports to be signed by I. E. Smith. An erasure, however, had been made where "S" was written, warranting an inference that the document was not signed by any man whose real name was I. E. Smith. The document is poorly written, but in so far as we can decipher it, it reads, aside from the address and signature, as follows:

"I have not been able to get down there. Have you heard any more of those Herefords. I expect to go to Cal. for the winter and I am have a sale, and if you care to buy these herefords I and see you. I am just about cleaned out and may be we can make a deal."

The defendant at the same time also produced another letter, introduced as Exhibit C, dated November 5, 1921, signed by defendant, directed to I. E. Smith, Greeley, Colorado, duly mailed but returned to defendant unopened. The letter was as follows:

"When do you expect to come after your cattle. I have found ten head. I am moving some of my cattle to Ault soon and if you want yours brought down let me know soon."

A like letter, so defendant testified, was written to I. E. Smith at Carpenter, and though the record is not clear thereon, was apparently not returned. Defendant admitted that he had not seen said Smith since said time and had not heard from him. He denied the charge against him and a number of witnesses testified to his reputation for honesty.

We thought it best to state the substance of the defendant's evidence first, so that the evidence on behalf of the state may be judged in the light thereof and in connection therewith. The following facts, or inferences, to prove the venue, corpus delicti, and the identity of the person committing the crime in question appear from the record:

The animal in question was, prior to its disappearance about October 1, 1921, kept, together with other Hereford cattle to the number of about 1500, in a pasture on the so-called Hereford ranch about 7 miles east of Cheyenne, in Laramie County, Wyoming, and about ten miles north of the northern line of the State of Colorado. The pas-

ture was well fenced and the fence kept in good condition. Three ordinary wire gates gave access to and from the pasture. These were kept closed, though able to be opened at will. The animal in question was shown to be unusually gentle, giving, in connection with the evidence as to the condition in which the fence was kept, rise to the possible inference that it would not have voluntarily strayed from the herd. The animal was neither sold nor authorized to be sold by its owner. It was present in the pasture in question about September 1, 1921, at a tally then made of the herd, but was found to be absent at another tally made about November 1st, 1921. About 4:30 p. m. on October 1st, 1921, the animal in question was seen by the witness Clyde Glasspool at the so-called Reynolds ranch in Colorado, about 22 miles south of the Hereford ranch. The Reynolds ranch was then, as the evidence tends to indicate, temporarily in the control and possession of the defendant. The witness Clyde Glasspool, driving through a gate of this ranch, saw three men at or near the corral of that place, about 300 yards distant from the gate. These men almost immediately, without approaching the witness, and apparently under suspicious circumstances, left the corral, two of them riding away in a gallop, and one of them driving away in a Chevrolet automobile. The witness did not know the men that rode, but thought that the man in the Chevrolet car was either the defendant or one Don Straight—in any event a man of a stature similar to that of the defendant. The latter was ordinarily, during that period, driving a Chevrolet car. The witness, upon approaching the corral, found, among other things, lariat ropes and a pile of horns. Some of the cattle at least, including the animal in question, had just been dehorned. The head of the latter was still bleeding, or showed evidences of recent bleeding. The horns had been cut, one ear had been "swallow-forked," that is to say, had a piece in the shape of a V cut out of it and the other ear had been cropped to the extent of at

least one half. Some of these things at least, so the evidence indicates, are unusual in connection with pure-bred Hereford cattle, and all of them, in view of the brands on the animal in question, give rise to the possible inference that there was an attempt to mutilate it for the purposes of destroying its identification marks. The witness Clyde Glasspool returned to the Reynolds ranch the next morning and found that the lariat-ropes, the pile of horns and the cattle were gone.

The "I. E. Smith" letter heretofore mentioned and the incidents connected therewith played an important part at the trial. According to the testimony of the witness Gray, the defendant, in company with his brother-in-law Coates, came to the former's place, not far from that of defendant, a short time previous to Thanksgiving day in November, 1921, and asked the witness whether he would not do him a favor and mail a letter for him at Carpenter, Wyoming, and stated, upon being asked why it could not be mailed at a nearer place, that it had better be mailed in Wyoming and at Carpenter. The envelope containing the letter, so the witness stated, was white, of medium size, addressed to Charley McFetridge, Ault, Colorado, with a return address to I. E. Smith; that the first name of defendant was not, on said envelope, written as "Charles" but "Charley;" that the name of McFetridge was misspelled; that the handwriting was very poor. At the time that the witness testified to these details, he did not know that this, or a similar envelope, would be subsequently produced in court by the defendant; the latter in fact testified that Gray had not handled any of his mail, and hence apparently wanted the jury to understand that Gray could not have known of the existence of the letter and envelope which he produced in court. These details, however, which the witness related, were borne out by the envelope produced in court by the defendant subsequent to the time that the witness Gray testified. It is white, of medium size, mailed at Carpenter, Wyoming, November

19, 1921, addressed to Mr. Charley McFetereg, Ault Colo. The handwriting thereon is very poor. The left end is torn off, but what remains bears traces of having contained some sort of writing. In short, the envelope produced by the defendant himself bears striking testimony that the witness Gray had told the truth, and tending to overcome, in the minds of the jury, the evidence by which it was sought to impeach him. This witness testified to another conversation which he claimed to have had with defendant about January 1, 1922. In that conversation, so the witness stated, he told defendant that rumors were afloat that the latter and two others got the Hereford cattle then in defendant's pasture. We quote part of the testimony:

"He (defendant) said 'that letter that you took to Carpenter and mailed for me, it was in regard to them cattle,' and he said 'that clears me,' and then when I told him about the other two parties that was accused or suspicioned of being with him, or suspicioned that they got the stuff from the Hereford ranch, he said 'No I pulled that stunt off alone;' that a man by the name of 'Slick' had had someone in Cheyenne write that letter."

"I told him that I heard that day, and also before, that I had heard that people had suspicioned him and these other two parties of stealing these cattle from the Hereford ranch, and one of the parties had seen the cattle and knew the cattle. Q. "What was McFetridge's reply? A. He made the remark, he said, 'I pulled that stunt off alone, and I was working on that deal the day I came through your place."

The witness Gray further testified that defendant came to his place, about the time that the latter had his preliminary examination in Cheyenne in connection with the present case, and stated that he had been asked in Chey-

enne whether Gray had not mailed a letter for him at Carpenter; that he, defendant, had denied that fact and stated to the witness: ''You could have knocked me down with a feather.'' Defendant wanted the witness to go to Cheyenne to deny it, but this the latter refused to do.

As stated before, the defendant had evidently on several occasions maintained, as he did on the trial, that he received the Hereford cattle in question from one I. E. Smith. The evidence on the part of the state tends to show, that on one occasion, he was asked by the witness Farr if this I. E. Smith was the same party who, some time before, was ''drunk at a round up'' and that defendant answered in the affirmative. This party so referred to, as being drunk on the occasion mentioned, was identified by the witness Farr as a man then sitting in the court-room whose name was Victor Smith. This Victor Smith took the witness-stand, testified that he had lived in the vicinity of Burns, or Carpenter, for fourteen years, had handled Hereford cattle, which he sold in 1919, that thereafter he went to California and other places for a time, and that he did not turn over any Hereford cattle to defendant to be pastured. The witness Miller, who purchased the McFetridge ranch, testified in effect that despite the fact that the defendant disclaimed that he owned the Hereford cattle, he nevertheless intimated that they might be bought for $75 to $80 per head; that he would take up with I. E. Smith a proposition to purchase them; that Miller offered $50 per head, and that defendant then stated that Smith had returned from California and he would communicate with him. I. E. Smith, however, never appeared and the jury were justified in drawing the inference that he was a mythical person.

Counsel for defendant claim that the evidence in the case is insufficient to sustain the verdict. It is claimed that the corpus delicti has not been proven; that no felonious taking has been shown. We are cited to Robinson v. State, 18 Wyo. 230, 106 Pac. 24, where the court held

that evidence of possession of goods recently stolen is not admissible for the purpose of proving corpus delicti—that the goods have been stolen. We may readily concede that the mere possession of property recently lost does not show that larceny has been committed, but when such possession is accompanied by incriminating circumstances a different question arises. Thus it was said in Dalzell v. State, 7 Wyo. 450, 455; 53 Pac. 297, 298:

"The loss and subsequent finding of property does not prove, or in many cases tend to prove, the corpus delicti—that it was lost by larceny. But the loss and even imperfect identification of it in the possession of the accused, together with incriminating circumstances of misstatement and concealment may, as in this case, not only identify the guilty person but satisfactorily establish the corpus delicti."

This case was followed and approved in Richey v. State, 28 Wyo. 117, 131, 132, 201 Pac. 154, 205 Pac. 304. We cannot agree with counsel for defendant that the testimony of the defendant's possession of said cattle is the only testimony in the case connecting the defendant with the crime and that hence, since such possession does not show the commission of larceny, there is no evidence whatever of the corpus delicti. The incriminating circumstances in this case, while in many respects different, are as strong as those in the Richey case. The confinement of the animal in question in a well-kept pasture, together with the fact that it was unusually gentle, had a tendency to show that it would not voluntarily stray away, particularly to a distance of twenty-two miles; the circumstances of its mutilation warranted the jury in finding that there was a deliberate attempt to conceal the evidences of larceny. The testimony of Gray, which the jury had a right to believe, would authorize the latter in finding that defendant had virtually acknowledged that he had stolen

the animal in question. The jury had a right to find that defendant undertook to make it appear that he received said animal from I. E. Smith, a mythical person, warranting the inference that defendant deliberately undertook to conceal the crime of larceny committed by him. These and other facts and circumstances in the case, which we need not pause to point out, fully, we think, warranted the finding not only that the crime of larceny had been committed, but also that the defendant was guilty thereof.

Nor can we agree that there is not sufficient evidence in the record showing that the crime was committed in Laramie County, Wyoming. It is, of course, true, that the animal might have strayed from that county into the State of Colorado. But that, under the circumstances shown in this case, would be mere conjecture. In determining this question the jury had a right to consider the condition of the pasture in which the animal was kept, the fact that the animal was unusually gentle, the distance from the Hereford ranch, the home of the animal, to the Reynolds ranch, the mutilation of the animal at the latter place under suspicious circumstances, the fact that defendant attempted to establish a claimed ownership of the animal in I. E. Smith at Carpenter, in said Laramie County, the falsity of defendant's claim as to how he came into possession of the animal, and the conversation with Gray about January 1, 1922, which might be construed as an admission by defendant that he stole the animal from the Hereford ranch. The jury were the judges of the facts and we think that there was ample evidence in the record to sustain their finding.

In this connection it is urged that the court erred in not giving to the jury defendant's requested instruction No. 12, to the effect that they must find beyond a reasonable doubt that the crime was committed in Laramie County, Wyoming. There is a sharp conflict of authority as to whether venue should, in a criminal case, be shown beyond a reasonable doubt or by a preponderance of the evidence.

16 C. J. 769; note Ann. Cas. B. p. 939; L. R. A. 1918 B. 1187. The case at bar involves not only the question of venue as between two counties in the state, but also as to whether the crime was committed in Wyoming or Colorado. The only case which we have found which involves the latter of these conditions is State v. Jackson, 142 La. 450, 77 So. 196, L. R. A. 1918 B. 1178, where it was held that the question whether or not a crime has been committed within the state where the law invoked for its punishment prevails is a question bearing directly upon the guilt or innocence of the accused and must be proven beyond a reasonable doubt. We are not, however, called upon to decide the question, for the reason that we have no proper assignment of error in regard to it before us. That assignment of error, contained in the motion for a new trial, is in the following words: "That the court erred in refusing to give instructions Nos. 3, 4, 11, 12, 13 and 14 on the law, tendered and prayed for by the defendant." That language is repeated in the petition in error. It is not now claimed that the court erred in its refusal to give any of the instructions so mentioned, except only as to said requested instruction No. 12, and we must therefore assume that the court correctly refused to give the other instructions. In Dickerson v. State, 18 Wyo. 440, 473, 111 Pac. 857, the court considered an assignment of error in the following language: "The court erred in giving to the jury instructions No. 1 to 8 inclusive, asked by the plaintiff." The court said:

"The error here alleged goes to these instructions as a whole. The rule is well settled that it is incumbent upon the complaining party to point out with definiteness and particularity the error of which he complains, so that the trial court may pass upon the exact question which may thereafter be presented for review. It will be observed that the assignment is not that the court erred in giving each of the instructions, but the assignment was directed

to the entire group designated, and that was the question presented to the trial court in the motion. Such being the case the universal rule is that the assignment cannot be sustained if any one of the group is correct. 29 Cyc. 950; 14 Enc'y. P. & P. 893. * * * Such being the law, the correctness or incorrectness of this instruction is not properly presented by the record.''

The situation in the case at bar is substantially that in the case just cited, and the same rule must be applied.

We find no merit in the contention that the testimony of the witness Clyde Glasspoole should have been stricken from the record. He testified, as has been seen, to the mutilation of the animal in question on the Reynolds ranch. This testimony was clearly admissible as tending to prove the corpus delicti. He further partially identified the defendant as one of the parties who was then present. The jury were the judges of the weight of this evidence.

Finding no reversible error in the record, the judgment of the district court should be affirmed. It is so ordered.

*Affirmed.*

Potter, Ch. J., and Kimball, J., concur.

ON PETITION FOR REHEARING

Potter, Chief Justice.

A petition for rehearing has been filed in this cause which, if determined by the general expressions in the petition and brief in support thereof, would seem to be based upon the ground of fundamental and material error in the instructions to the jury depriving the plaintiff in error of a fair and impartial trial. It is stated as the first ground of the petition that the instructions as a whole presented an erroneous view of the law and the burden of proof as applied to the facts in the case; and in the third ground, that the court failed to instruct ''upon its own initiative'' in matters affecting the substantial rights of the plaintiff in error. But the point chiefly discussed in

support of the petition relates to the matter of venue; and the others may be regarded, we think, as merely incidental, intended to emphasize the importance of that question and counsel's view of the gravity of the alleged error in that matter, which might justify its consideration by this court, notwithstanding that the exceptions in that respect were not properly preserved under our well-settled rules of procedure to entitle them to consideration in this court on error. That question at least is the only one discussed in the present brief which, in our opinion, might have sufficient merit to justify reconsideration. Before concluding, however, we shall refer to some points made respecting instructions upon other points given or refused, to explain our view of their effect under the charge now made respecting the fairness of the trial. For under the rule of practice stated in the original opinion, such matters would not be otherwise entitled to consideration here.

The trial court, by an instruction stating it to be incumbent upon the prosecution to establish all the material allegations of the information beyond a reasonable doubt, and thereupon defining such material allegations "as here used," meaning of course the allegations necessary to be shown beyond a reasonable doubt, omitted a reference to the allegation that the crime charged was committed in the county of Laramie and state of Wyoming. But in a subsequent instruction the court did charge as follows:

"It is also necessary in order to convict the defendant, that you find that the crime charged in the information herein was committed in Laramie county, Wyoming. However, it is not necessary, that that fact, if it be a fact, be established beyond a reasonable doubt. If, therefore, you find beyond a reasonable doubt that the crime charged in the information was committed by this defendant, and you further find by a preponderance of the evidence that such crime was committed in Laramie County, Wyoming,

it will be your duty to convict him and return your verdict accordingly."

The record does not show an exception to either of those instructions. But exceptions were reserved to the refusal of certain instructions referring to the matter of venue, requested by the defendant, plaintiff in error here. They each declared in substance that the alleged fact that the crime charged was committed in Laramie County, Wyoming, must be proved beyond a reasonable doubt to justify a verdict of guilty. Neither of said instructions, however, was confined to that particular matter, but each included other matters within the declaration of the necessity of proof beyond a reasonable doubt; and they each might, perhaps, have been refused because of that fact. For we think it possible that some of the added matters might have been deemed confusing or misleading without explanation or modification. But for the purpose of this discussion the fact may be assumed, if entitled to consideration here, that such instructions were refused because requiring proof of venue as alleged beyond a reasonable doubt; and that was assumed in the original opinion.

Without deciding the question raised by the conflict between said given and requested instructions, it was held by the former opinion that there was sufficient, and, indeed, "ample" evidence to sustain the verdict upon the question of venue; and that was intended to express our view of the sufficiency of the evidence upon the theory that the law might require the venue to be proven beyond a reasonable doubt. And upon a further consideration of the facts for the purpose of disposing of the present application, we see no reason for a different conclusion as to that matter. It was then deemed unnecessary, however, to determine the degree of proof necessary upon that subject, and thus decide whether or not the court had erred in refusing the instructions requested as aforesaid, for the reason that the requested instructions were grouped in

the defendant's motion for a new trial with other re-
quested instructions refused which were not objected to
in this court, thereby bringing the case within a settled
rule of practice in this court that error so alleged must
be regarded as including the grouped instructions as a
whole, and that the assignment cannot be sustained if any
one of the group is correct; citing Dickerson v. State, 18
Wyo. 440, 111 Pac. 857. See also Richey v. State, 28 Wyo.
117, 201 Pac. 154, 205 Pac. 304, where, asserting and ap-
plying the principle that an aggrieved party must defi-
nitely point out the ruling of which he complains, it was
held that a general exception to a group of instructions
will be disregarded if any one of the group be correct.

Counsel now appearing for plaintiff in error assert in
their brief that they are not impressed with the merit of
the said rule of practice so established in this jurisdiction,
without, however, contending that it should be abandoned
or attempting to show wherein it is or might be improper
or unreasonable. But it is argued that this case comes
within an exception to said rule also established, as
claimed, by certain of our decisions cited in the brief, viz:
That it need not apply where the record shows funda-
mental error in the instructions as a whole, or in the pro-
ceedings throughout the trial, having the effect of depriv-
ing the party of a fair and impartial trial. And it is con-
tended that fundamental error within the meaning and
effect of that exception is disclosed by the record in this
case. Before proceeding to a discussion of that conten-
tion, we think it not improper to say, in view of the im-
plied criticism of the rule, that we remain convinced of
its reasonableness and propriety. It seems to be quite
generally accepted and applied by the appellate courts in
this country; and we believe it to be based upon good and
substantial reasons. The rule is stated in 29 Cyc. at pages
949 and 950, in the article upon the subject of "New
Trial." We quote therefrom:

"By the weight of authority, the particular instruction or instructions improperly given or refused, or the particular errors or omissions in the charge, must be pointed out with reasonable certainty.   *   *   *   Where several instructions are grouped in one specification, they will be examined only so far as is necessary to determine whether all were regularly given or refused.   In other words, if the action of the trial court was correct in regard to any one of the instructions so grouped, the assignment must fail.''

The paragraph from which we have quoted was cited in the Dickerson case. Many cases are cited in the note to the paragraph on page 951, and later cases adhering to the rule may be found cited in subsequently published volumes of annotations, including the Dickerson case and the following: Eberts v. Mt. Clemens Sugar Co., 182 Mich. 449, 148 N. W. 810; Cowperthwaite v. Brown, 82 Neb. 327, 117 N. W. 709; Fletcher v. Brewer, 88 Neb. 196, 129 N. W. 288. The court say in the cited Michigan case:

"Error is assigned because the court denied the defendant's motion for a new trial. Turning to the motion, we find that the second ground stated is that the court erred in not charging the jury as requested by the defendant in its several requests, which were refused by the court. An examination of the record discloses that defendant's requests to charge cover six pages of the printed record. An examination of them shows that some were given by the court, and some clearly should not have been given. The assignment of error is too general to be considered, under our repeated decisions'' citing cases.

In the Nebraska case of Cowperthwaite v. Brown, where two separate assignments were (7) that the court erred in giving the first, second, third, fourth and fifth paragraphs of the instructions asked for by the plaintiff, and (9) that

the court erred in giving the first, second, third and fourth paragraphs of the instructions given on its own motion, the court said:

"These assignments in the motion for a new trial were not sufficient to lay the foundation for the consideration of the instructions here further than to ascertain whether any one of the instructions in either group correctly stated the law."

In Fletcher v. Brewer, the same court say:

"The rule has long been established in this court that parties complaining of errors at the trial must point them out specifically to the district court in the motion for a new trial. Where a general assignment is made that the court erred in giving a group of instructions, it is not error for that court to overrule the motion for a new trial if any one of the instructions in the group has been properly given."

The rule thus established as the result of judicial decisions is in full accord with, and necessary, we think, to render effectual, the spirit and purpose of a written rule in force in this court since early territorial days, adopted pursuant to statutory authority, requiring as a condition to consideration on error the making, and an exception reserved to the overruling of, a motion for a new trial in the court below, as to any matter which could properly have been assigned as a ground for such a motion; the manifest purpose of which was and is that the trial court shall be first advised of alleged error respecting any such matter and afforded an opportunity to consider and correct the same. Wilson v. O'Brien, 1 Wyo. 42. Obviously, that rule would be rendered of slight or no effect in many if not most cases if a general averment or assignment of error of law, without designating the particular ruling or rulings, should be held sufficient. A situation might then

be presented imposing upon the trial court the necessity of examining the entire record of the proceedings to ascertain possible error. And in the case of instructions given or refused, a mere general exception to all, or all of specified paragraphs, in and as a group, or a general assignment of error respecting them in a like manner, fails to suggest or point out particular error claimed to have been committed, as we believe to be contemplated by the rule. Such a practice, therefore, is to be condemned, if we are to insist upon a compliance with a procedure established and maintained more than half a century in this jurisdiction. The fact that through ignorance of our rules of procedure, or carelessness, the right to insist in this court upon a consideration of a ruling by the court below may occasionally be lost to a party, constitutes no proper ground for abandoning the rule aforesaid or for establishing an exception to it.

The abstract principle behind the rule is usually applied and has been applied in this court to other matters of procedure. Thus, in North Platte Milling Co. v. Price, 4 Wyo. 293, it was held that where the overruling of a joint motion for a new trial was clearly right as to one of the parties, it was properly overruled as to both. And in Stickney v. Hughes, 12 Wyo. 397, 75 Pac. 945, it was held that where an offer of proof is made as a whole, some of the facts included in the tender being admissible and others inadmissible, the refusal of the court to separate them and admit such parts as are competent will not be error, although the court may, in its discretion, do that.

As above explained, it is here sought to avoid the application of the rule upon the ground of such fundamental error in the instructions as to deprive the accused of a fair trial, and Palmer v. State, 9 Wyo. 40, 59 Pac. 793, is cited in support of the position taken. The accused in that case was charged with murder and convicted of manslaughter; and the cause was remanded for a new trial by this court upon a reversal of the judgment, upon the

ground of error in instructions relating to the right of the defendant to resist when attacked, as he was, in his own house, to which he had fled to escape threatened bodily injury at the hands of the deceased. That was the vital question in the case upon the facts. And the court, after stating the facts, which the jury were authorized to find upon the evidence, said:

"With these facts·characterizing the case, all instructions which informed the jury that it was the duty of the defendant to retreat before he would be justified in whatever resistance might be, or might reasonably seem to be, necessary against the assault of the deceased, were necessarily inapplicable to the evidence, misleading and prejudicial to the defendant. * * * That it was material can not be doubted. Indeed, it went to the very substance of the defense."

One instruction was given which appeared to be correct, but so inconsistent with others, upon the question, that the court expressed its inability to determine whether the jury had followed the correct or erroneous statement of the law. Upon the contention that sufficient exception had not been taken to entitle the error in the instruction to be considered, it was said that the exception was to the charge itself and sufficient in that case for the reason that "the instructions for the state as a whole present an erroneous view of the law as applied to the facts."

It appears clearly from the opinion, especially the concluding part, that the court considered the case to have been submitted upon a fundamentally erroneous theory of defendant's substantial rights as one assaulted in his own house, permitting him to be convicted when he may have been entirely within the rights accorded him by the law. Thus the opinion concludes:

"But it was uncontroverted upon the former trial that the deceased, after assaulting the defendant and threatening his life, pursued him, invaded his house, and assaulted him there with the avowed purpose of killing him.   *   *   * The person so assaulted has the right to defend himself and to pursue his adversary until he has freed himself from all danger. Whether the defendant kept himself within these principles, is the issue which should be presented to the jury for decision."

The other cases wherein questions have been considered by this court, in the absence of exceptions properly taken and shown by the record, were capital cases, and all that was said therein upon the subject of the right to such consideration was limited to cases involving capital punishment. Parker v. State, 24 Wyo. 491, 161 Pac. 552; Cirej v. State, 24 Wyo. 507, 161 Pac. 556; Omaha v. State, 24 Wyo. 513, 161 Pac. 558. In each of these cases the trial court had erroneously defined murder in the first degree, through an incorrect explanation of premeditated malice, and had stated, in a manner likely to mislead the jury, the duty of the court as to sentence in case of a verdict qualified, as allowed by statute, with the words "without capital punishment." And in one or more of them other material errors also appeared. It was said in Parker v. State:

"The taking of the life of a human being as a punishment for crime has not in later years met with general approval; and appellate courts have inclined to the view that in capital cases it is not only their right but their duty to examine the record for the purpose of ascertaining whether or not the defendant has been deprived of his constitutional right to a fair and impartial trial. But it is only in those cases where it clearly appears that such fundamental errors have been committed on the trial as to deprive the defendant of his substantial rights, or that

the ruling, decision, or other matters complained of clearly appear to have been prejudicial to the defendant that the judgment should be reversed; and especially so where exceptions have not been timely taken, or the errors have not been fully stated in a motion for a new trial.  *  *  * However, if it clearly appears from the record that such fundamental and prejudicial error has been committed as to amount to a denial of substantial justice, or to deprive the defendant of a fair trial, the court should not hesitate to reverse the judgment and grant a new trial, although proper exceptions were not taken at the time.  *  *  * The case being a capital one, and as the judgment if enforced will deprive a human being of his life, we have deemed it our duty to look into the record for the sole purpose of ascertaining whether or not such fundamental error was committed on the trial as to deprive the defendant of his constitutional right to a fair trial; and in doing so we have followed the humane rule adopted by other appellate courts, by considering some errors which appear to us to be fundamental, although not shown by the record to have been excepted to at the time.''

In an earlier capital case, Seng v. State, 20 Wyo. 222, 122 Pac. 631, it appearing that the record was insufficient to present any alleged error argued in the brief of counsel for plaintiff in error, the court by Beard, then Chief Justice, who later wrote the opinion in the Parker case, said:

''On the imperfect record presented we might well dispose of the case without further consideration. But the case being an important one, involving the life of the plaintiff in error, we have carefully examined not only the record properly before us, but also all of the papers on file, including the purported evidence, and we fail to find anything therein that leads to the conclusion that he did not have a fair trial.''

And, holding that the instructions given to the jury were as favorable to the defendant as the law would warrant, and that the evidence, assuming it to be shown correctly and in full by the transcript of the reporter's notes, fully supported the verdict of the jury, the judgment was affirmed, and the sentence of capital punishment ordered executed. In the Dickerson case aforesaid it was stated by the writer hereof, speaking for the court in disposing of the petition for rehearing, that a certain instruction defining reasonable doubt was correctly disposed of upon the original hearing, without consideration of its merits, on the ground that it was not mentioned in the motion for a new trial except as one of a group excepted to, following which it was said that the rule followed in Palmer v. State was not applicable to that, the Dickerson case. The Dickerson case was fully as important as the one now under consideration, for the accused was therein charged with the crime of perjury and convicted, and the judgment was affirmed.

The effect and applicability of the rule stated in the Palmer case was considered also in Richey v State, wherein the charge, as in the case at bar, was the larceny of cattle, and the court's instructions, which had been excepted to only as a group, were examined to ascertain (1) whether as a whole they presented an erroneous view of the law as applied to the facts, and (2) whether it might be said that all of the group so excepted to were erroneous. And both of the suggested questions were answered in the negative, the court saying:

"We repeat, the issues in the case were simple, and they were no doubt well understood by the jury. And in view of that, and the convincing character of the evidence pointing to defendant's guilt, we are satisfied that the verdict was not the result of any erroneous statements in the instructions now criticized by counsel."

Referring to the subject again in the opinion disposing of a petition for rehearing in that case, it was said in substance that the court was unable to agree with counsel in the contention that either of the instructions complained of was "fundamentally erroneous or necessarily prejudicial, or announced an incorrect theory affecting the entire charge and the validity of the trial." And it was said as to one instruction that, while disapproved and condemned either as useless and unnecessary, or as liable to mislead the jury, by the very clear weight of authority, yet, by such authority, it was held not to be either fundamentally erroneous or inherently prejudicial, and not reversible error unless appearing to be prejudicial in the particular case. That opinion also quoted the following from Ohama v. State, touching the propriety of our rule of practice now criticized:

"The rule is a salutary one in most cases and should not be departed from even in criminal cases, except where deemed necessary to the security of defendant's right to a fair trial or the just administration of the law."

The contention of fundamental prejudicial error in this case is based chiefly upon the action of the court in refusing to instruct that the alleged venue must be proven beyond a reasonable doubt, and directly instructing that it may be proved by a preponderance of the evidence. As stated in the former opinion, there is a sharp conflict of authority upon that question, and we cited generally 16 C. J. 769; Ann. Cas. 1912 B, note 939; L. R. A. 1918 B 1187. There is respectable authority either way, even where the question is whether the crime was committed in one or the other of two adjoining states. A Louisiana case was also cited in the former opinion, holding that whether or not a crime has been committed within the state where the crime is being prosecuted is a question bearing directly upon the guilt or innocence of the ac-

cused, and must be proven beyond a reasonable doubt. State v. Jackson, 142 La. 540, 77 So. 196, L. R. A. 1918 B, 1178. But it was dictum .in that case, for the opinion states that the single question of law presented as to venue was whether, ''as between two parishes'' in the state, it should have been established, by a preponderance of the evidence, to the satisfaction of the jury, or ''beyond a reasonable doubt.'' The trial court had instructed that it might be established by a preponderance of the evidence, .and that was sustained, the decision being limited, however, to a situation where the dispute relates to political subdivisions of the same state, the court saying:

''It is no doubt true, we think, that, where venue is an essential element of a crime, it must be proved beyond a reasonable doubt; but where it is proved beyond a reasonable doubt or conceded that an act denounced by the law of a particular state as a crime has been committed within the territorial limits where that law prevails, the question whether it was committed within the limits of one political subdivision of the state or another concerns, as we have said, not the guilt or innocence of the person accused, but merely the question of the place and court in which he shall be prosecuted; and that being the case, we are of opinion that such fact may be established by a preponderance of the evidence, to the satisfaction of the jury, and that there was no error in the ruling of which defendant complains.''

But where the question arose as between adjoining states, the same principle of the sufficiency of a preponderance of evidence was applied in Oklahoma, though seemingly also as dictum. Jentho v. State, 200 Pac. 253. It seems to have been questioned in that case whether the alleged offense was committed in Oklahoma or Texas, and the court held that the place established by the testimony as the place of the crime was in Oklahoma, since the court

would take judicial notice of the boundary line south of that. But it was said further:

"Also it has been held that the venue in a criminal cause does not have to be proved beyond a reasonable doubt. * * * We deem the venue of this case to have been sufficiently established to have been in Bryan County, Oklahoma."

And in Arkansas (Cuzic v. State, 152 Ark. 230, 237 S. W. 1094) it was held that venue need not be proved beyond a reasonable doubt, but may be proved by a preponderance of the evidence, where the question was the sufficiency of the evidence to show the commission of the alleged crime in Arkansas, as against the possibility that it might have been committed in Oklahoma. And see Patrick v. State, 135 Ark. 173, 204 S. W. 852.

Again, in U. S. v. Clein, 189 Fed. 201, decided in the U. S. district court for the Eastern District of Washington, it appeared that the accused was convicted of murder alleged to have been committed within a U. S. military reservation situated within said district. The opinion states that the sole question presented was the sufficiency of the evidence to prove that the crime was committed within the court's jurisdiction; and that was to be determined, as we understand, from testimony showing merely that the body of the deceased was found on the reservation about 150 yards from its eastern boundary, and perhaps double that distance from its western boundary. Holding the proof of venue to have been sufficient, the court said in substance that the finding of the body on the reservation with the marks upon it of injuries sufficient to cause death, showing that it must have been placed there by the hand of man, was sufficient to warrant a finding that the homicide was committed upon the reservation, and therefore within the jurisdiction of the court, notwithstanding that the prisoner's counsel had contended that any inference or presump-

tion arising from the finding of the body and wearing apparel of the deceased on the reservation had been overcome by testimony tending to show that the body was moved after death, and by other testimony needless to mention. In declaring the legal rules to be followed in determining the question, the court in its opinion quoted, among other statements, the following from Underhill's Criminal Evidence:

"The venue need not be proved beyond a reasonable doubt. If the only rational conclusion from the facts and evidence is that the crime was committed in the county alleged, the proof is sufficient."

The question, as related to state boundaries, appears also to have arisen in Tennessee, Norris v. State, 127 Tenn. 437, wherein the court said that "the best and latest authority is, by a decided weight, to the effect that the issue of venue, being jurisdictional, need not be established beyond a reasonable doubt," citing cases, and Bishop's New Criminal Proc., Sec. 384, Underhill's Crim. Ev. Sec. 36, 4 Elliott on Evidence, Sec. 2214, and 13 Enc. Ev. 931. And the court then said further:

"The rule announced by these authorities is that a preponderance of the evidence relating to that issue is sufficient. * * * Why should the prosecution by the state be made to carry a burden of proof in respect to venue not logically imposed? A fact of this case—the turning out of horses, alleged to have been stolen, to range and graze at will, particularly if assumed to belong to an owner living near a county or state line—brings into view the practical effect of applying the rule of reasonable doubt to proof of venue. Added emphasis is given by a consideration of the fact that the cities of Memphis, Chattanooga and Bristol, and other considerable towns in this State, lie near or immediately on the State line."

Other cases holding, generally, that a preponderance of evidence is sufficient are: People v. McIntosh, 204 Ill. 602; People v. Adams, (Ill.) 131 N. E. 76; Lowman v. State, 80 Fla. 18, 85 So. 166. The Illinois court say, by Mr. Justice Cartwright, in People v. McIntosh:

"The venue was a jurisdictional fact which the people were required to prove (citing cases), but it was not an element of the crime to be proved beyond a reasonable doubt (citing cases). The venue is proved if there is evidence from which it can reasonably be inferred that the crime was committed within the jurisdiction where the prosecution takes place."

The instruction given by the court in People v. Adams was substantially the same as Instruction No. 5 given in this case, except that it did not expressly permit a finding upon a preponderance of the evidence, and that case expressly distinguishes between proof of the commission of the crime and proof of venue, which, although said to be an element of the crime and a jurisdictional fact, it is held need not be proved beyond a reasonable doubt.

A rule seeming to be peculiar to North Carolina is that while the fact that an offense charged may have been committed in another state is available under the plea of "not guilty," it is nevertheless a matter of defense and the burden of proving it is on the defendant. State v. Mitchell, 83 No. Car. 582; State v. Buchanan, 130 No. Car. 660; State v. Blacksley, 138 No. Car. 620; State v. Barrington, 141 No. Car. 820, 53 S. E. 663.

On the other hand, there are several authorities to the effect that the fact of venue in a criminal case is an essential averment to be established by the prosecution beyond a reasonable doubt. 1 Wharton's Crim. Ev., 10th Ed., Sec. 107a; Jolly v. Commonwealth (Va.) 118 S. E. 109; Dossett v. State (Ala.) 98 So. 359; State v. Casey (Ore.) 213 Pac. 771; Marakes v. State (Ga.) 123 S. E. 687; State v. Jackson, 77 O. St. 34, 82 N. E. 969, 122 Am. St. Rep. 479, 13

L. R. A. N. S. 341; U. P. R. R. v. State, 88 Neb. 547, 130 N. W. 277; Ann. Cas. 1912 B. 836; State v. Keeland, 39 Mont. 506, 104 Pac. 513. And see cases cited in Note 97, to Sec. 1574, page 770, 16 C. J.

In the Alabama case of Dossett v. State, the accused was indicted for manufacturing liquor, and the dispute as to venue was whether defendant's still was located in Alabama or in Mississippi. The court said, in substance, that it was material to show the location of the still, and therefore to show where the state line was located, placing the burden upon the state to show by the evidence beyond a reasonable doubt that the location was in Mobile County. In the section of Corpus Juris above cited (Volume 16, Sec. 1574), the fact of the conflict in the authorities upon the question of the degree of proof might seem to be stated in 'such a manner as to indicate that the cases maintaining the preponderance of evidence rule represent the weight of authority, though it may not have been so intended, and some of the cases cited as supporting that rule do not directly so hold. And that is said to be the "majority rule" in a note to the Nebraska case of R. R. Co. v. State, Ann. Cas. 1912 B, p. 939; but in the 10th edition of Wharton's Criminal Evidence it is said that "the weight of authority is that venue must be proved beyond a reasonable doubt." Sec. 107a. We shall not attempt a decision as to which rule is supported by the better or the weight of authority. But, as in the original opinion, we shall leave the question as to the correct rule undecided, deeming such a decision unnecessary in this case; though perhaps we should express our inclination, where at least the dispute relates to adjoining states, to regard the proposition that a mere preponderance of evidence is sufficient as subject to much doubt.

The principle, however, seems to be well established that direct evidence is not necessary to prove venue, but that, like any other fact, it may be established by proof of facts and circumstances from which it may reasonably be in-

ferred. 16 C. J., Sec. 1573, pp. 768, 769; 1 Wharton, Crim.
Ev., 10th Ed., Sec. 108. Thus it is said in Wharton:

"To prove venue, it is not necessary that the witnesses
should testify in terms that the offense was committed in
the place charged. As in all other essential matters, the
proof is not required to be direct, nor in express terms, but
all reasonable inferences of which the testimony will admit
may be drawn by the jury, under the instructions of the
court, as to where the crime charged occurred."

And we quote the following judicial expressions on that
subject: "Venue may be inferred from circumstantial evi-
dence as well as proved by direct evidence." State v.
Greene, 38 Utah 389, 115 Pac. 181. "Whether the venue is
properly laid is to be gathered from the evidence as a whole,
and competent evidence of the fact, sufficient to satisfy the
jury, satisfies the law." State v. Dooley, 82 Wash. 483, 144
Pac. 654. "Since it does not affect the issue of guilt or in-
nocence,   *   *   *   slight evidence will be sufficient to sus-
tain the venue, and slight circumstances from which the
jury might infer the place where the crime was committed,
are held to be sufficient." Stubblefield v. Comm., 197 Ky.
718, 246 S. W. 444; Sebree v. Comm. (Ky.) 255 S. W. 142.
"But the question of venue is always a question of fact,
and it may be proved like any other fact. If the evidence
raises a violent presumption that the offense was commit-
ted in the county where he is tried, it is sufficient." State
v. Burns, 48 Mo. 438; Richardson's Case, 80 Va. 174; Low-
man v. State, 80 Fla. 18, 85 So. 166. "Unquestionably the
commonwealth was as much bound to prove the venue as
to prove the larceny itself. The evidence to prove it, how-
ever, may be either direct or circumstantial." West v.
Comm. (Va.) 90 S. E. 654. And the Nebraska court, both
before and after the decision in Railroad v. State, supra,
held that if from the facts in evidence the only rational con-
clusion is that the crime was committed in the county al-
leged, the proof is sufficient. Weinecke v. State, 34 Nebr.

14, 51 N. W. 307; Booton v. State, 86 Nebr. 114, 125 N. W. 144. See also State v. Frost (Minn.) 200 N. W. 295; Herdison v. State (Ark.) 265 S. W. 84; State v. Meyer, 135 Ia. 507; State v. Gow, 235 Mo. 307.

From this review of the authorities upon the subject of the degree and quantum of proof required to establish venue in a criminal prosecution, presenting a situation considered by the court in disposing of the cause upon the original hearing, as shown by the opinion then filed, it appears that many courts, including several state courts of last resort, have adopted the preponderance of evidence rule, where the question affects the jurisdiction, not only of a court of one political or judicial subdivision of a state as between it and another like court in the same state, but also where it involves the jurisdiction of the state or government creating the court. And, further, as established by what may be deemed, at least, the weight of authority, whatever the rule as to degree of proof, the evidence will be sufficient, if reasonably justifying an inference of the place of the crime from the proven facts and circumstances. In view thereof, we think the conclusion unavoidable that, if erroneous, which need not be decided, the court's action in the matter of the instructions aforesaid was neither fundamentally erroneous, in the sense of having deprived the defendant of a fair trial or of any substantial right, nor necessarily prejudicial. And in view of our expressed conviction that the evidence was sufficient to establish the alleged venue, upon any theory, the error, if any, in said instructions cannot be held to have been prejudicial in this case.

The case did not present a situation involving difficult or intricate legal principles. It was a simple case of the larceny of a cow, described as a pure-bred registered Hereford, kept, with other pure-bred Hereford cattle, within a well fenced enclosure, and known to have been therein upon a certain date and later found to be missing, but afterwards found, disfigured and mutilated, in the possession of the defendant, about 22 miles from said enclosure, though on the

other side of the boundary line dividing this from an adjoining state. The jury had a right to believe from the evidence that the animal did not escape from the enclosure unassisted, but was taken therefrom by someone with felonious intent. The evidence does not show that any gates were found open, or that the fence was down or broken. There was no conflict in the evidence as to venue. If the jury believed the defendant's testimony stating the manner in which he came into possession of the animal, it would not have disproved the fact of the larceny in this state by someone, but merely that he was not the one who committed it. A belief of his story would have acquitted him of the larceny of the animal in either state. It is evident that the jury did not believe his testimony, but were left with the duty of determining the question of venue upon the facts and circumstances brought into the case through the evidence of the prosecution. And in addition to the pertinent uncontradicted facts aforesaid there was the circumstance of the letter mentioned in the former opinion, addressed to defendant and mailed at Carpenter, in this state (a place located in Laramie County, and but a very few miles from the eastern or southeastern part of the Hereford Ranch where the alleged stolen animal was pastured), which the jury, disbelieving defendant's testimony, might have considered as indicating guilty knowledge of the place where the animal had come from and belonged.

It is further contended in the brief that manifest prejudicial error was committed in permitting the State to inquire of so-called character witnesses called by the defendant as to the defendant having been ''subsequently'' indicted in Colorado for stealing, bringing out the fact that he had been, that the Colorado juries had disagreed, but that some of the people believe the defendant to have been guilty, and others have a contrary opinion. And it is argued that such inquiry must relate to reputation ''prior'' and not subsequent to the offense for which defendant was on trial. All of that testimony was received without objection. The only

objection in the record as to any such testimony was on the prosecution's re-direct examination of one of said witnesses when the ground of the objection was merely "improper redirect-examination." And the court remarked upon that objection being made that the witness had answered that he didn't know; the question having been whether it was not a fact that there was a hung jury in the last case, that he was still under indictment and was still to be tried thereon before another jury. The answer was that he had been acquitted of all cases so far as the witness knew.

However, the questions now complained of propounded to such witnesses were not in form inquiries as to "subsequent" indictments or offenses. For example, upon cross examination of the first witness, the question as to such other indictments was: "Now, you do know that McFetridge has been indicted down there in that county three or four different times for cattle stealing, don't you?" And the witness gave an affirmative answer, and a like answer to the next question: "Accused by the authorities of that county?" A few of the following questions may also be here given as illustrative of the cross-examination of all of such witnesses:

"Q. There is a difference of opinion there as to the integrity of this defendant, isn't there? A. There seems to be; yes, sir. Q. Some people give him the character that you have given him, and others believe him to be guilty, don't they? A. Well, I think they do. Q. Then his general reputation isn't good, is it? A. It is with us. Q. What? A. It is with the bank. Q. It was with the bank, and that's as far as you want to go, isn't it? A. Yes sir."

We observe nothing in any of that essentially improper, if improper at all. In the absence of a proper presentation of the matter before this court upon exception properly taken, it is certainly not incumbent upon us to determine the limitation, if any, upon such cross examination.

It is further contended, in an attempt to show that the whole of the instructions were based upon an erroneous theory, that the second instruction given, defining the material allegations of the information, omitted the matter of venue therefrom. But we have above called attention to the fact that the 5th instruction declares it necessary, also, in order to convict, that the jury find that the crime charged was committed in Laramie County, Wyoming. The second instruction may reasonably be construed, especially when not excepted to, as having intended and purported to define only the material allegations necessary to be shown beyond a reasonable doubt. At any rate, we think it quite clear that the omission of the averment as to venue, in view of what was contained in the 5th instruction, cannot be held to be either fundamentally erroneous or necessarily prejudicial.

It is mistakenly stated in the brief that there was no direct evidence of venue. That the Hereford Ranch, where the animal was shown to have been kept, was located in Laramie County, Wyoming, and that she was seen upon that ranch a comparatively short time before she was noticed to be missing, was directly testified to. Also that the part of the ranch or the pasture wherein she was kept and was last seen before found to be missing was about ten miles from the Colorado line. And the person whose duty it was to look after the maintenance of the fences testified that they were all in good condition at the time; that every post was in, and every wire—a cedar post and four barbed-wire fence, and a fence that had always held their cattle. The evidence that the animal was afterwards found to be missing from said pasture and later discovered in Colorado, about twenty-two miles from the ranch, was also shown by direct evidence. And that, in our opinion, justified a finding that, if the animal was found by the jury to have been stolen, the act occurred in this state and the county alleged in the information. Douglass v. State, 91 Ark. 492, 121 S. W. 923. Among the several criticisms of the instructions

·to sustain the contention that they presented an erroneous view of the law of the case, the following words of the second instruction are referred to as having that effect (quoting from the brief): ''That 'some of the facts or circumstances (but not stating which) may be established by a preponderance of the evidence or may not be established.' '' These words were used as a part of the following, contained in the second instruction, which defined the material allegations of the information necessary to be shown beyond a reasonable doubt:

''If these allegations are established in your mind, beyond a reasonable doubt, then the prosecution has established beyond a reasonable doubt all of the material allegations of the information. It is not necessary that other facts or circumstances surrounding such testimony as has been given on behalf of the State should be established beyond a reasonable doubt. Some of these facts or circumstances may be established by a preponderance of the evidence, or may not be established. It is not meant that it is incumbent upon the prosecution to prove every fact surrounding such testimony, as given, beyond a reasonable doubt. All that is incumbent on the prosecution is that all the facts and circumstances taken together should establish the defendant's guilt beyond a reasonable doubt. If you are satisfied beyond a reasonable doubt from all the evidence in the case, of the defendant's guilt, you should find him guilty.''

A like instruction, given in a homicide case where the accused was found guilty of first degree murder, was approved in Horn v. State, 12 Wyo. 80, 73 Pac. 705; the only material difference between the instruction in that case and the second instruction in this being that in the former the instruction included, among the material allegations, that the crime was committed within the county alleged at or about the time stated. The instruction was criticized in the Horn case for stating it to be unnecessary that ''other facts or circumstances surrounding such testimony should be

established beyond a reasonable doubt, that some of such facts or circumstances may be established by a preponderance of the evidence, or may not be established, and that it is not meant that it is necessary for the prosecution to establish every fact surrounding such testimony beyond a reasonable doubt.'' And this court said:

''It is not true that the prosecution is bound to establish beyond a reasonable doubt every minor circumstance given in proof as tending to establish the main or ultimate fact essential to conviction. * * * It is not every circumstance entering into the proof that the law requires to be established beyond a reasonable doubt. * * * The words objected to are not misleading, nor liable to be misunderstood, when considered in connection with the remainder of the instructions. * * * It is evident that all that it was intended to say was that every circumstance offered in evidence tending to establish the ultimate facts or circumstances upon which a conviction depended, need not be proven beyond a reasonable doubt.''

And the discussion of the question by this court in that case is approvingly referred to in a note under section 2497 of Wigmore on Evidence (Volume 4) ; and again in the second edition of that work, in a note under a section of the same number. So far as the criticism of the words of the instruction quoted, as above, in the brief, may be based upon the omission from the instruction of the averment of the place where the crime was committed as a material allegation, it is fully answered by what has been said above with reference to that omission, viz : the giving of the 5th instruction stating such alleged fact to be necessary to be proven by the state before the defendant could be convicted.

We should not further extend this opinion by reference to other instructions requested by the defendant. Most, if not all, were misleading and would have confused the jury because of unnecessary additions therein to the law of lar-

ceny and the rules of evidence. But we shall mention one, the 14th requested instruction, which declared that if the jury should find that the animal came into defendant's possession "through accident or mistake or by a trick of some other person" then their verdict should be acquittal. There was nothing in the evidence to justify the giving of that instruction. It was not claimed upon the trial, so far as the record shows, that the defendant had been, or claimed to have been "tricked" into the possession of the animal, or that he obtained possession through accident; nor that such possession was taken through mistake, unless the jury should believe his testimony that he acquired possession through authority given him by one Smith, from whom he claimed to have received authority to take possession. But he had all the advantage of that testimony without this 14th request. Several of the instructions given urged upon the jury the necessity of considering the testimony of the defendant, who was presumed to be innocent, and that his testimony should not be objected to merely because he was the defendant. Thus, one of the instructions stated that the jury have no right to disregard testimony of the defendant on the ground alone that he is the one charged with the commission of the crime; that the law presumes him to be innocent until proven guilty, and allows him to testify in his own behalf, and that the jury should fairly and impartially consider his testimony, together with all the other evidence in the case. They were also instructed that if they believed from the evidence that prior to the alleged commission of the offense, the defendant had borne a good reputation among his acquaintancs in the community where he lived, that was a fact to be considered by them with all the other evidence, in determining the question of his guilt. We do not conceive it possible, upon any theory of the instructions, that the jury could or would have found the defendant guilty if they believed his testimony concerning the manner in which he obtained possession of the animal.

We can only say, in conclusion, that a re-examination of the record in this case has failed to convince us of the existence of any reasonable ground upon which it might be held that the defendant did not receive a fair and impartial trial, or that he has been deprived of any substantial right accorded him under the law. An order must, therefore, be entered denying the petition for a rehearing.

*Rehearing Denied.*

BLUME and KIMBALL, JJ., concur.